## Central Bridge Corporation *vs.* City of Lowell.

A corporation owning a toll bridge may maintain a bill in equity, as for a nuisance, to restrain a city from unlawfully laying out the bridge as a highway.

A franchise to build and maintain a bridge may be taken for a highway, whenever the legislature deem that the public exigencies require it, reasonable compensation being made.

An act of the legislature, authorizing a city to take a toll bridge, and lay it out as a town way, paying " to the proprietors of the bridge, and to all other persons injured by such taking or laying out, the damages sustained by them, to be assessed and paid in the same manner as is now provided by law for the assessment and payment of damages occasioned by the laying out of town ways in the city," does not affect the measure of compensation to be made to the proprietors for their franchise, and does not therefore impair the obligation of any contract in their charter upon that question.

A statute, authorizing a city to lay out, as a town way, a toll bridge between it and a town is not repealed by a subsequent statute, authorizing the city and town, or either of them, to maintain a bill in equity to ascertain the amount on payment of which they were authorized, by the charter of the proprietors of the bridge, to open it free of toll. And the filing of such a bill by the city and town jointly is not such a conclusive election of the mode of proceeding to open the bridge free of toll, as will preclude a subsequent laying out of the bridge by the city as a town way. But such a bill cannot be maintained after such a laying out.

BILL IN EQUITY, filed on the 25th of July 1855. The bill alleged that the plaintiffs were duly established and organized as a corporation, and built and ever since maintained a bridge over Merrimack River, at Bradley's Ferry, between the towns of Dracut and Chelmsford, under and by virtue of *St.* 1824, *c.* 110, and received thereon the tolls granted them by law; that, for the purpose of remunerating said corporation for the expense of building and supporting this bridge, certain tolls were granted for their sole use and benefit, for the term of seventy years, subject however to be regulated anew by the legislature at the expiration of eighteen years; and it was provided, among other things, " that whenever the receipts of toil and income shall have amounted to a sum equal to the expense of building, repairing and sustaining said bridge, with nine per cent. on the first cost, said bridge shall revert to the Commonwealth for public use; or whenever the inhabitants of the towns of Dracut and Chelmsford shall remunerate said proprietors for the expense of said bridge, (deducting what may have been received for toll,) the same may be opened free of toll; " and that

by *St.* 1825, *c.* 112, incorporating the town of Lowell out of part of Chelmsford, *St.* 1836, *c.* 128, " to establish the city of Lowell," (which was duly accepted by the inhabitants of said town,) and *St.* 1851, *c.* 8, annexing part of Dracut to Lowell, all those parts of Chelmsford and Dracut in which said bridge was located came within the city of Lowell.

The bill then alleged that by *St.* 1843, *c.* 50, said corporation were authorized to reconstruct their bridge, and for the purposes of reconstructing it, and defraying the expenses incidental thereto, to assess upon their stockholders a sum not exceeding $9,500, or to create new stock to that amount; and it was provided that the sum of $10,000, being a portion of the cost of the original bridge, not then reimbursed and repaid to them under their charter, together with the sum that should be expended in and about the reconstruction thereof, should thereafter constitute their capital stock, deducting from said ten thousand dollars such sums as might be received for tolls, exclusive of expenses, between the time of their dividend in January 1843 and the time said act should take effect; and for the purpose of remunerating and repaying to them said several sums, and the expenses of maintaining said bridge, they were authorized to collect certain tolls in this act specified; provided, nevertheless, that whenever the tolls collected under this act should have amounted to a sum equal to the capital stock as therein constituted, together with the interest thereon at the rate of nine per cent. per annum, and the repairs and expenses of maintaining the bridge, the bridge should revert to the Commonwealth for public use, unless prior thereto the corporation should be reimbursed, and the bridge opened, according to the terms and by the authority granted in the original charter; and the corporation should be forever after free from any liabilities or responsibilities in relation thereto; that this act was duly accepted by the city of Lowell, and then by said corporation; and they created new stock, and the sum of $9,000 was assessed thereon, and paid in, and a like sum expended in reconstructing the bridge, and in expenses incidental thereto. The bill also set forth the *St.* of 1845, *c.* 31, making similar provision for

raising an additional sum of $5,000; and the raising and expending of $4,000 pursuant to that act.

The bill then alleged that by *St.* 1851, *c.* 106, all the rights, privileges, immunities and powers granted and reserved to the inhabitants of the town of Chelmsford by *St.* 1824, *c.* 110, were transferred and granted to the city of Lowell; and that by *St.* 1853, *c.* 356, it was provided as follows: " The city of Lowell are hereby authorized to enter upon, take and lay out the Central Bridge aforesaid, as and for a town way or street, in the manner now provided by law for laying out town ways or streets in the city of Lowell; and they shall pay to the proprietors of the Central Bridge, and to all other persons injured by such taking or laying out, the damages sustained by them, to be assessed and paid in the same manner as is now provided by law for the assessment and payment of damages occasioned by the laying out of town ways or streets in the city of Lowell; " but that these last named acts were passed without the consent, and against the protest of said proprietors, and were unlawful interferences with, and violations of, the rights, immunities, privileges and property secured to them by their act of incorporation and the several acts in addition thereto.

The bill then alleged that by *St.* 1854, *c.* 436, which act was procured to be passed by said city and town, it was enacted as follows: " The supreme judicial court shall have full power and authority to hear and determine in equity, upon the petition of the city of Lowell and town of Dracut, or either of them what sum the Central Bridge Corporation shall be entitled to receive from the city of Lowell and the town of Dracut, or either of them, in order that the bridge of said corporation over Merrimack River in said Lowell may be opened free of toll; and also to order and decree that, upon the payment of such sum to the said corporation by the city of Lowell and the town of Dracut, or either of them, the said bridge shall be opened, free of toll; and to make and award all such judgments, orders, decrees and injunctions, and issue all such writs and processes, as shall be necessary or proper to carry into full force and effect the powers and authority hereby given them; " and the town of Dracut were

authorized to pay such proportion of the expense of opening said bridge free of toll, and of maintaining the same, as that town, at any legal meeting thereof, called for that purpose, might determine, and for that purpose to assess a tax upon the inhabitants of the town; and that the plaintiffs consented to the passage of this act. And the plaintiffs alleged that said city and town did, under and in adoption of said act, bring their bill in equity against the plaintiffs, for the purpose of ascertaining the amount the plaintiffs were entitled to receive from said city or town, or either of them, before the bridge should be opened free of toll, and did thus conclusively elect the remedy and mode of proceeding to cause the bridge to be free; that to this bill the plaintiffs filed an answer; and also filed a cross bill, for the purpose of obtaining a decree compelling said city and town to remunerate and reimburse to the plaintiffs the amount they were by law entitled to receive from said city and town, or either of them, before their bridge should be opened free of toll as aforesaid, and to compel said town and city to open the bridge free of toll; and a summons in that cross suit in equity was duly served upon said city and town, and both of said suits in equity are now pending in this court.

And the plaintiffs claimed that they were entitled to have remunerated and reimbursed to them, before the bridge should be opened free of toll, the several sums of $10,000, $9,000 and $4,000, before mentioned, with interest thereon, reckoned at nine per cent. per annum.

The plaintiffs then alleged, that if the *St.* of 1853, *c.* 356, ever had any binding force and effect against them, it was wholly inconsistent with, and repugnant to, and wholly repealed by the *St.* of 1854, *c.* 436—said last named act providing an entirely different mode of opening the bridge free of toll, and also of assessing the amount to be paid to the plaintiffs, namely, by this court sitting in equity, and not by a jury empanelled by the sheriff in the country; and by force of the *St.* of 1854, and said proceedings under and in adoption thereof, the city of Lowell, if they ever had the legal right or power to lay out said bridge as and for a town way, have it no longer.

Notwithstanding which, the bill alleged, the city council of Lowell, on the 24th of July 1855, passed a resolution for taking and laying out the bridge as a town way, and assessing the plaintiffs' damages at one dollar; and the plaintiffs had reason to believe, and did believe that the city council would lay out the bridge accordingly; and, though said laying out would be wholly illegal and void, it would greatly impede and embarrass the plaintiffs, if not wholly prevent them from collecting tolls, and would cause and work a nuisance to their rights, and deprive them of the beneficial use and enjoyment thereof, and cause great and irreparable loss and damage.

The bill then set out other grounds on which the equity jurisdiction of the court was invoked, and prayed for a discovery, for a perpetual injunction against the laying out of the bridge as a town way or street, and for further relief and for due process.

The answer admitted most of the allegations in the bill, but denied that the *Sts.* of 1851, *c.* 106, and 1853, *c.* 356, were unlawful interferences with or violations of the rights, immunities, privileges and property of the plaintiffs; that the defendants, by the proceedings in equity under the *St.* of 1854, or any of them, conclusively elected their mode of remedy, or concluded themselves from the power to take and lay out the bridge as a town way under the *St.* of 1853; or that the plaintiffs were entitled to have remunerated and reimbursed to them, before the bridge could be opened free of toll, the sums mentioned in their bill with interest reckoned at nine per cent., or any other sum; and alleged that the receipts from tolls had exceeded the expense of building, repairing and maintaining, and nine per cent. interest thereon, and that under the act incorporating the plaintiffs and the acts in addition thereto, the bridge ought to revert to the Commonwealth for public use; and that, whether the plaintiffs' receipts had amounted to that sum or not, and whether the bridge had so reverted, or ought so to revert or not, the defendants had the right to take and lay out the bridge as a town way under the *St.* of 1853; and denied that the plaintiffs were entitled to any remuneration or payment of damages before the bridge could be so taken and laid out.

The answer denied that the *St.* of 1854, *c.* 436, was, in any respect, inconsistent with, or repugnant to, or wholly or in any part repealed the *St.* of 1853, *c.* 356; but averred that that act, and all the rights and powers which they ever had under it are still in full force and effect; and alleged that the plaintiffs were fully heard by the city council before the bridge was so laid out; and that by the doings of the city council, and by authority of said acts, and other laws of this commonwealth, the bridge was duly and lawfully taken, laid out and established as a town way, and, as such, the defendants and the public have the right to have, use and enjoy the same, without hindrance or interruption; and denied that said laying out was or would be void and illegal, or would unlawfully or unjustly prevent, impede or embarrass the plaintiffs in collecting tolls, or that the plaintiffs had any right to collect tolls of any person; because the bridge, by virtue of the proceedings and laws aforesaid, was duly laid out and constituted, and was a town way, and, as such, the public and all persons were entitled to use and pass over it free of toll. And they denied that the laying out of the bridge by them as a town way was or would be a nuisance to the plaintiffs' rights; or that the plaintiffs would thereby suffer any loss, wrong or injury whatever; and alleged that, if they should thereby suffer any injury or damage, they had a full, complete and adequate remedy at law.

*R. Choate & B. Dean*, for the plaintiffs.

*J. G. Abbott & A. P. Bonney*, for the defendants.

The decision was made in February 1857.

BIGELOW, J. The case set out in the bill is clearly within the equity jurisdiction of the court. The plaintiffs are a corporation established by an act of the legislature, which confers upon them a franchise of a public nature; they are, and for a long time have been in the possession and enjoyment of this franchise, and in the exercise of the rights and duties with which they are clothed by their charter; the acts of the defendants, alleged in the bill and admitted by the answer, if illegal and without right, tend directly to the disturbance, dispossession and destruction of their franchise, and to the deprivation of all the rights and privi-

ieges conferred upon them by law. There can be no doubt, that such an injury and invasion of the rights of a corporation are in legal contemplation a nuisance, and that the only full and adequate remedy therefor is to be found in a resort to the equity powers of the court. *Charles River Bridge* v. *Warren Bridge,* 6 Pick. 376. *Boston Water Power Co.* v. *Boston & Worcester Railroad,* 16 Pick. 512. *Boston & Lowell Railroad* v. *Salem & Lowell Railroad,* 2 Gray, 27.

The whole controversy in the present case turns upon the validity of the acts of the defendants, by which they proceeded in July 1855 to take, lay out and appropriate the bridge constructed and owned by the plaintiffs, as and for a town way This was done in pursuance of a power expressly granted to the defendants by *St.* 1853, *c.* 356, § 3; and it is clear that if this act was originally valid and still continues in force, and the defendants have done nothing by which they have surrendered or lost the power and authority conferred upon them by it, their doings have been legal, and there is no ground for maintaining this suit.

1. The plaintiffs rely upon various objections to defeat and annul these proceedings, the first and most important of which is, that the section of the statute above cited, which gives to the defendants the right to enter upon and take the bridge of the plaintiffs, and lay it out as a town way, is unconstitutional and void. This position is based on the familiar principle, that the act incorporating the plaintiffs is a contract with the government, which it cannot legitimately impair or destroy. Starting with this, the plaintiffs then contend that the effect and necessary consequence of the power given to the defendants by the act in question is to infringe on the obligation of this contract, because it takes away their franchise and deprives them of the rights and privileges conferred upon them by their original act of incorporation.

It is true that the plaintiffs, by accepting and acting under the act by which they were created, and by advancing their money and building the bridge upon the faith of it, are entitled to insist that the legislature shall not invalidate or disregard the power

granted to them or the right created and vested by their charter. But it is also true that their powers and privileges, including everything which constitutes their franchise, are held and enjoyed in the same manner and by the like tenure as all other property and every species of valuable right and interest are possessed and owned under our constitution and laws. They can claim no special exemption or privilege for their franchise. It is subject to the same sovereign right of eminent domain, by which the property and rights of all subjects and individuals are liable to be taken and appropriated to a public use, in the manner provided in the Constitution, whenever the legislature shall deem that the public exigencies require it. This principle is too well settled by the highest authority to be now open to question. *West River Bridge* v. *Dix*, 6 How. 507. *Richmond, Fredericksburg & Potomac Railroad* v. *Louisa Railroad*, 13 How. 83. *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 35. *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63. In the case first cited, it was fully recognized and applied to facts very similar to those in the case at bar. It was there held, that a franchise to build and maintain a bridge might be taken and appropriated to a public use, and that the right of a corporation, under a charter from a state legislature, to erect and keep up a bridge and take tolls thereon, might be taken for a highway in the due exercise of the right of eminent domain.

Nor is the principle thus recognized any violation of justice or sound policy, nor does it in any degree tend to impair the obligation or infringe upon the sanctity of contracts. It rests on the basis that public convenience and necessity are of paramount importance and obligation, to which, when duly ascertained and declared by the sovereign authority, all minor considerations and private rights and interests must be held, in a measure and to a certain extent, subordinate. By the grant of a franchise to individuals for one public purpose, the legislature do not forever debar themselves from giving to others new and paramount rights and privileges when required by public exigencies, although it may be necessary in the exercise of such rights and privileges to take and appropriate a franchise pre-

viously granted. If such were the rule, great public improvements, rendered necessary by the increasing wants of society in the development of civilization and the progress of the arts, might be prevented by legislative grants which were wise and expedient in their time, but which the public necessities have outgrown and rendered obsolete. The only true rule of policy, as well as of law, is that a grant for one public purpose must yield to another more urgent and important, and this can be effected without any infringement on the constitutional rights of the subject. If in such cases suitable and adequate provision is made by the legislature for the compensation of those whose property or franchise is injured or taken away, there is no violation of public faith or private right. The obligation of the contract created by the original charter is thereby recognized. The property of individuals in it, and the rights acquired by them under it, like other property appropriated for public uses, form proper subjects for indemnity in damages under the provision in the tenth article of our Declaration of Rights.

These well established principles leave no room for doubt as to the validity and binding force of the provision contained in *St.* 1853, *c.* 356, § 3, under which the acts set forth in the bill have been done by the defendants. The intent of the legislature to empower them to enter upon and take the bridge of the plaintiffs for a public use is unequivocally expressed; and adequate provision is made, by which the plaintiffs can seek and obtain compensation for all injuries and damage which they may sustain by reason of such appropriation.

2. It was further urged, as a reason why the enactment in question should be deemed illegal and void, that it was provided by the original act incorporating the plaintiffs, and the several acts in addition thereto, that whenever the bridge should be opened free of toll, the plaintiffs should be entitled to receive a sum equal to the expense of building their bridge and repairing and maintaining the same, deducting therefrom what might have been received for toll, with nine per cent. interest thereon; and that no provision was made by *St.* 1853, *c.* 356, for the payment of this sum, but that a different rule of compensation was thereby established, in violation of the plaintiffs' rights.

Admitting, for the sake of argument, that the construction put by the plaintiffs on their charter and the several acts in addition thereto is correct, it is very certain that the conclusion drawn from it in connection with the act in question is wholly unfounded. The *St.* of 1853, *c.* 356, establishes no measure of compensation for the damage which may be sustained by the plaintiffs by reason of the exercise of the power conferred on the defendants. It changes none of the rights of the plaintiffs under their charter. It only provides for the taking and appropriation of them to a public use. It leaves their value, and the proper compensation to be paid for them by the public, to be determined by the legally constituted tribunals having jurisdiction of the subject matter, according to the rules of law applicable thereto. If, by the several acts under which the plaintiffs have acquired and now hold their rights and privileges, they are entitled to a certain fixed measure of damage to be ascertained by a prescribed rule, they can recover it of the defendants in the manner pointed out by law. Their rights in this respect remain unimpaired by the act of 1853, c. 356.

3. But it is further urged by the plaintiffs, that if that act was constitutional and valid, so that it would have justified the acts of the defendants, if seasonably undertaken and completed, it was repealed by *St.* 1854, *c.* 436.

It seems to us, however, that this argument proceeds upon an entire misapprehension of the purpose intended to be effected by the latter act. This will be readily seen by reference to the original act incorporating the defendants, *St.* 1824, *c.* 110, § 3, providing that "whenever the inhabitants of the towns of Dracut and Chelmsford shall remunerate said proprietors for the expense of said bridge (deducting what may have been received for toll) the same may be opened free of toll." This right was recognized and confirmed by the acts subsequently passed, allowing the plaintiffs to increase their capital stock; *Sts.* 1843, *c.* 50, § 4; 1845, *c.* 31, § 2; and also by *St.* 1851, *c.* 106, and by the act in question, *St.* 1853, *c.* 356, § 4. By *St.* 1851, *c.* 106, the right conferred by the above provisions upon the inhabitants of the town of Chelmsford was transferred to and vested in the city

of Lowell, which had, subsequently to the charter of the plain tiffs, been incorporated out of territory originally forming part of the town of Chelmsford. With the right thus conferred upon the towns of Dracut and Chelmsford, and transferred from the latter to the defendants, of remunerating the plaintiffs for the cost of their bridge and opening it free of toll, no corresponding remedy was given. The parties were left to seek out such means of enforcing their right against the plaintiffs as the rules of law might furnish. These, it is obvious, would not be very adequate or complete. The sole object therefore of *St.* 1854, *c.* 436, was to supply this defect, and to afford the specific remedy of a bill in equity, at the suit of the town of Dracut and the city of Lowell, or either of them, to enforce the right which had been conferred on them by previous acts. This is the plain intent of the statute. It is susceptible of no other reasonable construction.

Viewed in this light, it was not intended and cannot operate to repeal the *St.* of 1853, *c.* 356, § 3. There are no express words of repeal; and there is nothing inconsistent or repugnant in the two acts, so that the latter operates to repeal the former by implication. The purposes of the two acts are widely different. The former was intended to delegate to the city of Lowell the right of eminent domain, to be exercised for the public good, with all the rights and incidents properly appertaining thereto, among the chief of which is that of appropriating private property against the will of the owner to a public use. The latter was only intended to enable the town of Dracut and the city of Lowell, or either of them, to enforce a right of purchase, to which they were entitled by the several acts under which the plaintiffs held their corporate powers. It was only a remedial statute, intended to carry into effect former provisions of law, but conferred no new rights, and neither changed nor repealed those which already existed.

4. This view of the purposes and objects of the two statutes is decisive of the remaining objection urged by the plaintiffs to the legality of the proceedings of the defendants, which is, that by filing a bill in equity under *St.* 1854, *c.* 436, § 1, the defend-

ants have conclusively elected their remedy and precluded themselves from the right of exercising the power of laying out the bridge as a town way under *St.* 1853, *c.* 356, § 3.

There is no doubt of the rule, applicable alike to both legal and equitable remedies, that, where a party has a right of election between two remedies of different natures for the same right, the election of one, deliberately made, with a knowledge of all the facts, and notified to the other party by suit, which has already caused him to incur expense and trouble, will be deemed conclusive, and a good bar to the enforcement of another remedy to vindicate or secure the same right. But the case at bar does not fall within this rule. The fallacy of the plaintiffs' argument is in assuming that the two remedies provided by law in the present case are designed to enforce the same right. This is not so. The suit in equity is not brought by the same party by whom the proceedings to lay out the bridge as a town way are instituted. The latter are commenced and prosecuted by the city of Lowell alone. The former is a joint suit in the names of the city of Lowell and the town of Dracut. The latter is the exercise of the right of eminent domain delegated by the Commonwealth to the defendants only. The former is the enforcement of a joint right of purchase, vested in the defendants and the town of Dracut in their corporate capacities. They are therefore, in legal contemplation, proceedings prosecuted *diverso intuitu*, and although in their results the object to be effected may be the same, they are in reality different remedies for enforcing different and distinct rights.

It is however quite clear that the suit in equity for the purchase of the franchise of the plaintiffs cannot be further prosecuted with advantage, because it is superseded by the appropriation of the franchise, under valid proceedings, for the purposes of a town way. We think therefore that its further prosecution should be discontinued, and thereupon the case will be disposed of by an entry of *Bill dismissed.*