DAVID PENDER and others v. N. J. PITTMAN and others.

*Injunction—Purchaser.*

1. An injunction against carrying out a contract of sale, made under a power contained in a mortgage, will not be granted where the relief to which the plaintiff conceives himself entitled is not sought until the sale has been made and the rights of a purchaser have intervened.

2. In order to be in a situation to avail himself of his supposed equities, the plaintiff should have attended the mortgage sale (he having full notice when and where it would take place) and apprised the bidders of his claims in the premises.

(*Capehart* v. *Biggs*, 77 N. C., 261; *Purnell* v. *Vaughan, Ib.*, 268, cited, distinguished and approved )

APPLICATION for an injunction in an action pending in EDGECOMBE Superior Court, heard at Chambers on the 21st of April, 1880, before *Gudger, J.*

Injunction refused and restraining order dissolved, and the plaintiffs appealed.

*Messrs. W. B. Rodman, Geo. Howard* and *Fred. Philips,* for plaintiffs.

*Messrs. Murray & Woodard* and *Connor & Woodard,* for defendants.

SMITH, C. J.  The plaintiff, David Pender, owning a lot in the town of Tarboro occupied and used as a store, the location and dimensions of which are particularly described in the complaint, on January 1st, 1874, his wife uniting with him, conveyed the same by deed of mortgage, to the defendant N. J. Pittman to secure a debt due him of $3,000; contracted for money loaned payable on the first day of the next year and the interest semi-annually with a power of sale in case of default in payment at maturity on twenty days notice.  The accruing interest he continued to pay up to January 1st, 1880, but was not required to pay the principal.  On February 1st, 1877, he alone made a second mortgage of his interest and estate in the lot to John Norfleet to secure several notes executed in the name of the firm of Pender & Jenkins, of which he was a member, of the aggregate principal of $2266.33, and a further sum of $750 to be thereafter advanced and which was advanced by the mortgagee, with a similar provision for a sale at any time after February 13th, 1878, at the election of the mortgagee on his demand in case of failure to make payment.  On January 1st, 1879, Pender made a third mortgage, his wife being a party, to Joseph B. Best of his residuary estate in the premises to secure a note of that date due the latter and payable one day after date and with a like clause conferring authority to sell after a notice of twenty days.  On November 10th, 1879, Pender conveyed the lot subject to these mortgages to the plaintiff, Andrew. J. Cotten, in trust to hold the same as a security for three several bonds executed the same day to said Pender by his wife, one of $2000, papable at ninety days; a second of the same amount at four months; the third of $2400 at six months, with a provision that if the bonds were paid as they respectively fell due, the estate should be conveyed by the trustee to her, the plaintiff, Mary C., for her separate use or to such other persons as she should designate in writing, and that if she

should fail to make the payments, the estate should be reconveyed to Pender. On November 19th, 1879, Pender made a general assignment of his personal property, including his wife's bonds to the said Cotten and John L. Bridgers, trustees, for the security and payment of his debts, giving priority to those in the mortgages, the fund thus created being sufficient, as he alleges, to pay in full the preferred debts and a ratable part of the others. On the day of the assignment but after its execution, a judgment was recovered against Pender by one of his creditors before a justice of the peace for about $70 which was at once docketed in the superior court and execution sued out thereon, levied upon the equity of redemption in the lot, and a sale advertised; but this was prevented by Pender's satisfying the debt. On January 1st, 1880, after due public notice in the name of all the mortgagees, Norfleet (acting for himself and the others), sold the premises to Thomas H. Gatlin, he being the highest bidder, at the price of $7526, the terms being that $2000 should be paid in cash and the residue in equal instalments at one and two years with interest, and possession delivered on April 1st following. Accordingly $2000 was paid on the day after the sale and three thousand dollars more were on the 14th day of the month paid to Norfleet who died soon after, and the defendants, W. H. Johnston and Benjamin Norfleet are his executors.

The complaint charges that the sale was premature and not authorized under any of the mortgages: not under the first, because the interest on the debt had been regularly paid and the forbearance of the morgagee to assert his strict legal right for the default as to the principal, for so long a period, entitled the mortgagor to a reasonable previous notice of the intent to terminate the indulgence in order that the latter might have an opportunity to raise the means to meet the obligation and obviate the necessity of a sale; not under the second, for want of a prior demand as provided

in the mortgage deed; nor under the last because no default had then been incurred.

The plaintiff, Pender, alleges that the mortgagee, Pittman, did not authorize or assent to a sale under his mortgage, and that upon conversations with him and with Norfleet, he had inferred that inasmuch as he had paid the execution, there would be no sale under the mortgage deeds.

The object of the suit, instituted on February 26th, 1880, is to have the contract of sale annulled—a resale of the premises under the direction of the court—an assignment of a homestead to Pender and wife and meanwhile an injunction against further steps to consummate the sale.

The defendants, the executors of Norfleet, answering on information and belief, say the sale was advertised in the name of the mortgagees by their testator after a conference with Pittman, and, as he understood, with Pittman's concurrence, at the court house and ten other public places in the town for the full space of time specified in the deeds; and that the said John L. Bridgers, the attorney and adviser of Pender and one of the trustees in his general assignment, also agreed " that it would be for the interest of Pender that the property should be sold under the mortgage deeds; and on the day of the sale he was consulted by the testator as to the time of delivering possession, and assented to the announcement that it would be on the 1st of April; that Pender himself stated a few days before the sale that the property would be sold if it brought the amount of the mortgage debts; that their testator as appears by entries in his books on January 12th, 1880, in his accounts with certain persons for whose benefit the notes of Pender & Jenkins were taken in his name and to whom he had transferred them, charges himself with their amount and on the next day paid them in full the balance due including the notes.

The defendant, Pittman, who with the executors puts in

a joint answer, says that his last interest was paid through an account which Pender had against his wife whose separate estate he was managing, in order that he might make up his administration account of the trust fund to the first of the year.

The defendant, Gatlin, answers that, without personal knowledge of the fact but on information and belief, the testator, Norfleet, did make demand of payment of the debts mentioned in his deed, before proceeding to sell. That the remark imputed to Norfleet when informed of the settlement of the execution by Pender, was preceded by the expression, "I have got nothing to do with that," and did not warrant the influence that he would suspend proceedings for the sale; that he paid a fair price for the land and bought in good faith, supposing all the requirements of the deeds to have been observed; that his co-defendant, Pittman, told him in February that he had given authority to Norfleet to act for him in making the mortgage sale, and that the plaintiff, Pender, on the day after the sale, admitted to him that he had through his attorney consented to the sale.

The complaint and answer, put in on oath, constitute the evidence heard by His Honor on the motion for an injunction against carrying out the contract of sale, of the time and place for hearing which, previous notice had been given the defendants as required in the temporary restraining order before made. His Honor refused the injunction and dissolved the restraining order, from which the plaintiffs appeal.

We are not disposed to controvert the correctness of the general proposition, maintained in the argument for the plaintiffs, that a mortgagee who does not avail himself of the right to sell upon the default of the mortgagor, and who, by long indulgence and accepting regular payments of interest, has encouraged this expectation of the continuance of those relations by his own voluntary conduct, ought not

to be allowed suddenly to enforce his suspended right and break up those relations, without a reasonable previous notice to the mortgagor to enable him to make an effort to meet his obligation. But this equity ought to be promptly asserted and not deferred until by the sale other interests may intervene, rendering it inequitable, if practicable, to reverse what has been done and restore matters to their former condition. Difficulties of the kind present themselves in the way of the present application. More than half the purchase money has been paid in and a portion of it paid out to holders of the secured notes who are not parties to the action, and the mortgagee is not alive himself to look after the necessary re-adjustment. But aside from this, it is not alleged that any payments have been made by the debtor upon the notes secured in the second mortgage, nor any forbearance to be implied from the conduct or omission of the testator ; and the sale by him under his own mortgage as effectually puts the title in the purchaser as if made under all rendered perfect by the discharge of the prior mortgage debt to Pittman. The only exception to this sale is the alleged want of a previous demand. This objection rests upon the testimony of a living witness to a transaction between himself and a deceased person who cannot give his own version, and if admissible the evidence should be carefully scanned and weighed in the light of reasonable probabilities. Why, it may be asked, should the mortgagee wish to sell unless to enforce payment ? And why does not the mortgagor in the misinterpreted conversations held with Norfleet in regard to the contemplated sale suggest his ability to pay, if longer indulgence were given ? Was not this itself an effectual demand to give activity to the power of sale ? But during the month preceding, the mortgagor had attempted an absolute sale to his wife and substituted her notes in place of his own equity in the land ; and of these he then made a general assignment with other personal property, which his own estimates show to be insufficient to meet his liabilities

and avert insolvency. The defendants' affidavits also state that the attorney of Pender was consulted and in behalf of his principal consented to the sale, was present when it took place, advised as to the time when possession would be given, and that on the succeeding day Pender himself admitted to Gatlin that he had through his attorney given his consent. It was with this information the second and larger payment of the purchase money in advance was made. It is in proof and without contradiction that Pender expressed his willingness to let the property be thus disposed of under the mortgages at a sum less than that bid, and there is no suggestion of any unfairness in the manner of selling—that the lot did not bring its full value or of any reasonable grounds for expecting a more favorable result from a re-sale. The homestead claim cannot prevail against the first and third mortgages so as to defeat the sale, and if valid it can be asserted against the fund in the distribution to be made. The decretal order retains the full value of the homestead to abide the future decision of the court upon the question of its validity. In the aspect of the case thus presented, and re-examining the evidence produced before His Honor, we entirely concur in his conclusion that the sale ought not to be disturbed and in refusing to restrain the parties from carrying out the contract. The cases of *Capehart* v. *Biggs* and *Purnell* v. *Vaughn,* 77 N. C., 261 and 268, are not in conflict with this opinion. In both, no sale had taken place and the proceedings therefor were stayed until (there having been dealings between the parties) the correct amount of the mortgage debt could be ascertained, so that the mortgagor might know what he had to pay and have reasonable time to raise the money and redeem his property.

We decide only upon the ruling of the court denying the interlocutory order for an injunction in this appeal and that the exception of the plaintiffs thereto are untenable. Let this be certified.

No error.                                        Affirmed.