## SPENCER v. RAILROAD.

(Filed December 6, 1904).

1. RAILROADS—*Consolidation of Corporations—Corporations—Acts (Private) 1901, chap. 168—Acts 1835-'36, chap. 25.*

   Under Acts (Private) 1901, chap. 168, certain railroads are authorized to consolidate.

2. RAILROADS—*Corporations—Consolidation—Eminent Domain—Stockholders.*

   An act authorizing the consolidation of certain railroad corporations upon a vote of a majority of the stockholders, allowing a stockholder actual value for his stock in lieu of taking stock in the consolidated company, is valid.

3. RAILROADS—*Consolidation of Corporations.*

   Where the legislature provides a method for assessing the value of stock owned by persons who do not desire to take stock in a consolidated company in lieu thereof, the mode prescribed is exclusive and must be followed.

4. RAILROADS—*Corporations—Laches—Equity.*

   Where a stockholder fails for two years to bring an action to annul a consolidation with another corporation, and meanwhile third persons have obtained interests in the consolidated company, a court of equity will not grant the relief demanded.

DOUGLAS, J., dissenting.

ACTION by R. P. Spencer and another against the Seaboard Air Line Railway Company and another, heard by *Judge George H. Brown, Jr.,* at February Term, 1904, of the Superior Court of WAKE County.

This is an appeal by the plaintiffs from a judgment upon a demurrer *ore tenus* at the October Term, 1904, of the Superior Court of Wake County. The *feme* plaintiff, Ida T. Spencer, alleged that she was the owner of seven shares of stock in

the defendant corporation, the Raleigh and Gaston Railroad Company, of the par value of one hundred dollars each; that she acquired the said stock in 1887 and has owned the same continuously to the date of the institution of this action; that said stock is represented by certificate No. 1644, bearing date of April 13, 1887.

2. That the defendant the Raleigh and Gaston Railroad Company was created and organized under an act of the General Assembly of North Carolina, chapter 25 of the Acts of 1835, and has since that day continuously exercised corporate powers thereby conferred until the alleged merger of said corporation in what is known as the Seaboard Air Line Railway.

3. That the said Raleigh and Gaston Railroad Company, acting under and by virtue of certain alleged and assumed powers attempted to be granted under an act of the General Assembly of the State of Virginia, has endeavored to merge and consolidate itself with certain other railroads under the corporate name of the Seaboard Air Line Railway, and has become the alleged holding corporation in respect to said other subsidiary corporations. That such alleged merger and consolidation was and is *ultra vires* and beyond the corporate powers of said Raleigh and Gaston Railroad Company, and is invalid and void in so far as the plaintiffs are concerned.'

4. That at a meeting of the stockholders of the said Raleigh and Gaston Railroad Company held in the city of Raleigh on May 20, 1901, in pursuance of a notice, a copy of which is hereto attached as part of this complaint, a majority of said stockholders undertook and attempted to take such action as would result in the merger and consolidation of said corporation as aforesaid; that said notice did not warrant such action; that at said meeting the said Ida T. Spencer, by her attorney in fact R. P. Spencer, appeared and protested against the action to be taken by a majority of said stock-

holders, and thereupon filed a written protest against such action, a copy of which is hereto attached as a part of this complaint; that prior to said meeting several other meetings had been held at which certain plaintiffs were not present, and of which they had no notice, at which certain proceedings were had which plaintiffs cannot state, because the records of said corporation are not kept within the limits of the State and plaintiffs have not been able to obtain access thereto; that the action of said meeting of May 20, 1901, was *ultra vires* and illegal and invalid and void as to the plaintiffs; that after filing of said protest said R. P. Spencer for himself and on behalf of said Ida T. Spencer withdrew from said meeting, and was not present thereafter and took no part in the proceedings.

5. That the said Raleigh and Gaston Railroad Company, so far as plaintiffs are concerned, has since the alleged merger and consolidation preserved its corporate identity and separate existence as a corporation, notwithstanding that since then it has nominally constituted an integral part of the so-called Seaboard Air Line Railway, and although it has not since then separately exercised its corporate powers and discharged its corporate duties; that it has not held any meetings of its stockholders or of its directors; that it has not published any statements of its receipts and disbursements; that it has not declared any dividends, but has subordinated itself to the management and control of the officers and directors of, the said Seaboard Air Line Railway, although, as plaintiffs allege, it has done so contrary to law and in violation of its corporate duties and obligations.

6. That immediately prior to or immediately after said stockholders' meeting of May 20, 1901, the said Raleigh and Gaston Railroad Company, acting through certain officers and agents, of whom plaintiffs cannot procure definite information, attempted to sell and sold 1,828 shares of the stock of

said Raleigh and Gaston Railroad Company which was held in its treasury for certain definite purposes; that the same was not sold for such purposes, but was sold in violation of the duties of said officers and of the rights of the plaintiffs; that it was sold to certain parties whose names plaintiffs cannot ascertain, but who were directly interested in the organization of the said Seaboard Air Line Railway; that it was sold secretly, without being offered for subscription to the stockholders of said road, including the plaintiffs, or to the public, and without any opportunity for bidders to bid for same; that it was sold at a grossly inadequate price and no account has ever been rendered in respect to its sale and purchase.

7. That under the charter and amendments thereto of the said Raleigh and Gaston Railroad Company it had no right or power to acquire stock of other corporations, nor to do any of the acts which it has attempted to do and has done in connection with said merger and consolidation; that said acts are unknown to plaintiffs in detail and in their entirety, and will be, if possible, ascertained and disclosed to this Court during the progress of this action; that all of said acts and doings which have resulted in said so-called merger and consolidation have been *ultra vires,* contrary to law and in derogation of the manifest and inherent rights and privileges of the plaintiff Ida T. Spencer as a stockholder in said corporation.

8. That if the said Raleigh and Gaston Railroad Company had maintained and discharged its separate duties as a corporation created and existing under the laws of North Carolina, the said stock of the plaintiff Ida T. Spencer would have largely increased in value and would now have been a valuable asset of said plaintiff; but that the said Raleigh and Gaston Railroad Company having undertaken to purchase the stock of other corporations and operate the same as a so-called

holding corporation, having issued bonds to an amount at present unknown to plaintiff, having assumed the debts of many other corporations, having endorsed or guaranteed bonds of other corporations, having assumed the burden of extending lines of railway upon its own credit, all of which it has done, and done many other things which were *ultra vires* and destructive of plaintiff's rights in the premises as one of its stockholders, the said stock has been prevented from receiving the dividends the said road would otherwise have earned. That if the said Raleigh and Gaston Railroad Company had been operated as a separate and distinct corporation, as it was originally chartered, and as it was intended that it should be, the plaintiff's stock would have produced for her large dividends during the past few years, whereas, owing to the illegal and destructive acts hereinbefore mentioned, her stock has produced for her no dividends whatsoever.

9. That the value of plaintiff's stock is not measurable in any degree by its present market value, because it has none, nor by its antecedent market value, which is not pertinent to this controversy. That the effect of the merger and consolidation has been to completely destroy the corporate existence of said Raleigh and Gaston Railroad Company, in so far as the actors therein could effect such destruction and to destroy completely the value of the plaintiff's said stock, both commercially and intrinsically.

10. That the said Raleigh and Gaston Railroad Company, or the officers thereof, if there be any, or the officers of the Seaboard Air Line Railway, have either destroyed the books, records and papers of the said Raleigh and Gaston Railroad Company, or have removed them beyond the limits of the State, either of which acts is contrary to law and in derogation of the rights in the premises of said Ida T. Spencer, as a stockholder in said corporation.

11. That the said corporation, the said Raleigh and Gaston

Railroad Company, has ceased to act under and in pursuance of its charter and in compliance with its corporate duty and the laws of North Carolina for the two years last past and since May 20, 1901; that thereby it has forfeited its charter under the provisions of section 688 of The Code of North Carolina.

Wherefore, the plaintiffs demand judgment:

1. That the defendants the Raleigh and Gaston Railroad Company and the Seaboard Air Line Railway be required to disclose to this Court as follows: When the attempted merger mentioned in this complaint went into effect and what are its terms; what relation the defendant Raleigh and Gaston Railroad Company bore and now bears to said merger; what have been the annual receipts and disbursements of the said Raleigh and Gaston Railroad Company as a separate entity and in its distinct and separate corporate capacity from January 1, 1901, to this date; what have been its annual net profits during said period; what stock of other companies it has acquired or attempted to acquire; what bonds of other companies it has purchased or assumed or guaranteed or endorsed; to whom it sold said 1,828 shares of treasury stock; when, and at what price; to what uses or purposes the proceeds derived from the sale of said stock were applied; what disbursements it has made out of the funds of said Raleigh and Gaston Railroad Company, or otherwise, to effect such merger and consolidation, or in connection therewith, or incidental thereto; who are the present corporate officers of the said Raleigh and Gaston Railroad Company; when and where the stockholders of said corporation held their last annual meeting, and what were the proceedings of such meeting, if any such meeting was held.

2. That the defendant the Raleigh and Gaston Railroad Company be required, under the direction of this Court, to render an accounting of all its receipts and disbursements

since January 1, 1901, to this date, as a separate and distinct corporation.

3. That the alleged merger and consolidation of the said Raleigh and Gaston Railroad Company with other corporations into what is known as Seaboard Air Line Railway be declared *ultra vires* and void as to these plaintiffs.

4. That a Receiver be appointed for said Raleigh and Gaston Railroad Company.

At the Session of 1899 (chapter 34) the Legislature of this State incorporated the Richmond, Petersburg and Carolina Railroad Company, a Virginia corporation, and by virtue of said act declared that said new corporation should succeed to all of the rights, etc., of the Virginia and Carolina Railroad Company, etc. By the provisions of an act of the General Assembly of Virginia, approved January 12, 1900, the Richmond, Petersburg and Carolina Railroad Company was authorized, upon petition filed in the Circuit Court of Richmond, to change its name, etc. The said railroad company duly filed its petition in said Court, praying that it be permitted to change its name to "The Seaboard Air Line Railway Company," and pursuant to said petition an order was duly made by said Court changing the name of said corporation in accordance with the prayer in said petition.

By chapter 168, Private Laws of 1901 of North Carolina, the Seaboard Air Line Railway Company, successor to the Richmond, Petersburg and Carolina Railroad Company, was empowered to exercise in this State all of the powers, etc., vested in the Richmond, Petersburg and Carolina Railroad Company under its charter and amendments thereto, etc. It was also provided that: "With the approval of two-thirds in amount of its stockholders given at any annual or special meeting * * * it may * * * lease, use, operate, consolidate with or purchase or otherwise acquire * * *

137——8

the Seaboard and Roanoke Railroad Company, or any railroad or transportation company now or hereafter incorporated, etc.,   *   *   *   and from time to time it may consolidate its capital stock, property   *   *   *   of any other such railroad or transportation company upon such terms as may be agreed upon by the respective companies, power being hereby granted to any railroad or transportation company or companies now or hereafter incorporated by or under any act of the General Assembly of the State of North Carolina with the approval of a majority in amount of its stockholders respectively given at a meeting called for such purpose, or at which all of the shares of capital stock are represented in person or by proxy to make and carry out such contracts of consolidation or lease, sale or other mode of acquisition or disposition," etc.   Provision is made for setting forth the terms of such contracts of lease, sale, etc., and requiring that a copy of the agreement be filed in the office of the Secretary of State. The statute contains the following proviso: "Any stockholder who dissents from any such consolidation or sale may within sixty days thereafter apply by petition to the Superior Court of Warren County, or any county in this State of which the dissenting stockholder was a resident at the time of the ratification of this act, to determine the value of his stock, and shall be entitled to receive from said consolidated or purchasing corporation the value as thus determined of such stock upon transfer thereof to the new corporation; such value shall be assessed by a jury trial if the same be requested by either party, and if the owner of said stock shall be a non-resident of this State application may be made to United States Courts having jurisdiction."

The following notice was issued: "To the Stockholders of Raleigh and Gaston Railroad—Notice is hereby given that a special general meeting of the stockholders of the above-named company will be held at its office in the City of Raleigh, N.

C., on the 20th day of May, 1901, at 9 o'clock A. M., for the
purpose of taking into consideration articles of agreement of
merger and consolidation of the following-named railroad
companies: Seaboard Air Line Railway, the Raleigh and
Gaston Railroad Company (and other corporations named),
heretofore entered into by the directors of said respective com-
panies, and at which meeting a vote by ballot will be taken
for the adoption or rejection of said agreement.

"By order of the Directors:
                    "J. M. SHERWOOD, *Secretary.*"

The plaintiff filed the following protest:
"To the Stockholders of the Raleigh and Gaston Railroad
    Company in session at Raleigh, May 20, 1901, and to the
    President and Secretary of said Company:

"Mrs. Ida T. Spencer, upon whom notice was served of the
meeting of stockholders of the Raleigh and Gaston Railroad
Company on May 20th, at 9 A. M., in Raleigh, to consider
articles of agreement of merger and consolidation of a number
of railway companies, to-wit, The Seaboard Air Line Rail-
way, the Raleigh and Augusta Air Line Railway Company,
and others, appears by attorney in meeting only to protest
against such action, and does hereby protest against the con-
sideration of said agreement, or of the adoption of the same,
as being *ultra vires* and injurious to and in derogation of her
rights as a stockholder.

                "Respectfully,        R. P. SPENCER,
                "*Attorney in fact for Ida T. Spencer.*"

Pursuant to said notice a meeting of the stockholders was
held in the city of Raleigh, N. C., on May 20, 1901. The
chairman submitted the proposed agreement of merger and
consolidation which had been duly executed by the other cor-
porations, also a certified copy of the resolutions of the Board

of Directors of the Raleigh and Gaston Railroad Company in relation thereto. The plaintiff thereupon filed the protest set out herein. The following resolution was thereupon unanimously adopted by a stock vote by ballot: *"Resolved,* etc., that they do hereby approve and adopt the agreement of merger and consolidation between," etc.—naming all of the roads entering into the merger or consolidation. It is not necessary to set out the terms of the agreement, as no controversy is made in regard thereto. The contract was duly executed as alleged in the complaint. His Honor upon the hearing rendered the following judgment: "In this cause the plaintiffs move the Court for an order compelling the defendant the Seaboard Air Line Railway Company to bring within the jurisdiction of this Court the records and books of the Raleigh and Gaston Railroad Company and to permit plaintiffs to inspect the same.

"At the same time the defendants move the Court to dismiss the action and demur *ore tenus* to the complaint, because no cause of action is stated which plaintiffs can maintain, and that upon the pleadings the action cannot be sustained.

"The Court is of the opinion that under the provisions of the act of the General Assembly, ratified February 27, 1901, chapter 168, Private Acts of 1901, and the other acts pleaded and referred to in the answer, the only remedy the plaintiffs have is given by said chapter 168, viz., sue for the value of their stock at time of the consolidation, with interest thereon.

"The defendants having consented thereto, the plaintiffs may, if desired, file within thirty days an amended or new complaint for the purpose of recovering the value of their stock, and having the value assessed in the manner pointed out in said act. After such complaint is filed it will be competent to require the production of such books, records, etc., of the Raleigh and Gaston Company, as tends to show such value.

"If the plaintiffs shall elect not to file such amended complaint to recover the value of their stock, then the Court adjudges that this action must be dismissed and defendants go without day and recover costs," from which judgment the plaintiffs appealed.

*Busbee & Busbee,* for the plaintiff.
*Day & Bell, T. B. Womack, Shepherd & Shepherd* and *Murray Allen,* for the defendant.

CONNOR, J., after stating the case. The plaintiff attacks the validity of the contract of consolidation or merger whereby the Raleigh and Gaston Railroad Company, together with a number of other companies owning and controlling connecting lines became a part of the Seaboard Air Line system, upon several grounds which it will be convenient to consider in the order in which they are discussed in the very excellent brief of her counsel. It is of course conceded that as the cause was disposed of by his Honor in the Superior Court and is before us upon a motion to dismiss as upon a demurrer *ore tenus,* every allegation made in the complaint, with such construction thereof as is most favorable to the plaintiff, must be taken as true. This of course is so for the purpose of drawing the legal conclusions therefrom. The plaintiff says that certain acts of the defendant are *ultra vires.* This is a conclusion of law to be drawn from the facts stated. It is also to be noted that although the complaint makes no reference to the several statutes enacted by the General Assembly, which being private acts do not come under our cognizance unless referred to and proven, his Honor's judgment expressly refers to at least one of them, and in the argument before us counsel treated them as being properly before us. The plaintiff says that a careful analysis of chapter 168, Private Laws of 1901, fails to show that any authority is conferred upon the Seaboard Air Line

Railway Company to consolidate, merge with or purchase from any other railroad than the Seaboard and Roanoke Railroad Company. That the statute conferring such extraordinary power upon railroad corporations should be clear and explicit—leaving nothing to construction or doubt. Why that single corporation should have been named in conferring the power and other railroad companies referred to in general terms does not very clearly appear. We think, however, that by a fair and reasonable interpretation of the language of the act the Raleigh and Gaston Railroad Company is included among those companies with which the Seaboard Air Line Company is empowered to consolidate, "and any railroad or transportation company now or hereafter incorporated by the laws of the United States or any of the States thereof." In conferring power upon other companies to consolidate the language is equally comprehensive—"power being hereby granted to any railroad or transportation company or companies now or hereafter incorporated by or under any act or acts of the General Assembly of the State of North Carolina," etc. The Raleigh and Gaston Railroad Company certainly comes within this classification. It would seem to follow that the other provisions of the act, unless otherwise expressed, must be construed as referring to all companies thus included in the class upon which the power is conferred to consolidate. Any other construction would render nugatory the power conferred. The plaintiff next insists that no consolidation can take place unless the power to so consolidate is expressly conferred upon both consolidating corporations. This proposition is sustained by the authorities cited. The reasons therefor are manifest. 10 Cyc., 293. We think that such power is conferred upon both corporations. Chapter 168, section 1, expressly confers upon the Seaboard Air Line Railroad Company the power "with the approval of two-thirds in amount of its stockholders, etc., to lease, operate, consolidate

with or otherwise acquire," etc. As we have seen, the power is conferred upon the Raleigh and Gaston Railroad Company to enter into the contract of consolidation, etc.

The evident purpose of the Legislature was to enable the Seaboard Air Line Railway to form by consolidation, merger or purchase a system of transportation through the State connecting with railroads in Virginia and South Carolina. The legislation in this State, together with that in Virginia, in regard to the Seaboard Air Line Company, which is expressly referred to in the preamble to chapter 34, Acts 1899, and chapter 168, Acts 1901, shows this to be the purpose and scope of the several statutes. This being ascertained, the principle by which we should be guided in interpreting the statute is thus stated: "Every statute is to be construed with reference to its intended scope and the purpose of the Legislature in enacting it; and where language used is ambiguous or admits of more than one meaning, it is to be taken in such a sense as will conform to the scope of the act and carry out the purpose of the statute." Black on Interpretation of Laws, 56 Endlich, 73.

It is settled that the power to consolidate may be conferred either in the charter or by a general enabling act. 10 Cyc., 289. The plaintiff next contends that, assuming that the statute confers the power upon the Raleigh and Gaston Railroad to consolidate, that such power can be exercised only by the unanimous consent of the stockholders. That a dissenting stockholder cannot be compelled to surrender his stock in the corporation and accept in lieu thereof stock in another company. That unless such power is conferred upon the majority of the stockholders in the charter, or by amendment thereto made before the subscription of the dissenting stockholder, an act of the Legislature conferring such power would be invalid as impairing the obligation of the contract between the stockholders. This proposition is amply sustained upon

principle and authority. The Supreme Court of the United States in *Clearwater v. Meredith,* 68 U. S., 25, discussing a statute permitting a consolidation of several railroad companies, says: "The power of the Legislature to confer such authority cannot be questioned, and without the authority railroad corporations organized separately could not merge and consolidate their interests. But in conferring the authority the Legislature never intended to compel a dissenting stockholder to transfer his interest because a majority of the stockholders consented to the consolidation. Even if the Legislature had manifested an obvious purpose to do so, the act would have been illegal for it would have impaired the obligation of a contract. * * * When any person takes stock in a railroad corporation he has entered into a contract with the company that his interest shall be subject to the direction and control of the proper authorities of the corporation to accomplish the object for which the company was organized. He does not agree that the improvement to which he subscribed should be changed in its purpose and character at the will and pleasure of a majority of the stockholders, so that new responsibilities and, it may be, new hazards are added to the original undertaking. He may be willing to embark in one enterprise and unwilling to engage in another; to assist in building a short line railway, and averse to risking his money in one having a longer line of transit." *Bolts v. Turnpike Co.,* 88 Ky., 54, 2 L. R. A., 594; *McCrary v. Railroad,* 9 Ind., 358. The defendant conceding this to be the law, says that the statute conferring the power upon the several railroad companies consolidating, expressly provides for paying the dissenting stockholder the full value of his stock at the time of the consolidation. This provision can only be sustained by invoking the right of eminent domain and condemning the stock for a public use by making compensation therefor. The plaintiff contends that at the date of the char-

ter of the Raleigh and Gaston Railroad Company (1835), no power to amend charters of corporations was reserved by the Constitution of this State, and that under the decisions of this Court they come within the protection of the doctrine of the *Dartmouth College case.* That all of the stock was issued prior to the adoption of the Constitution of 1868, by which such power was reserved. He also says that no general statute was in force in this State authorizing such consolidation. This contention is undoubtedly correct. It will be noted, however, that chapter 168, Acts 1903, does not undertake to amend the charter of the company or to do more than empower a majority of the stockholders to consolidate with the other companies. It is an enabling act and imposes no duty or obligation upon the corporation or its stockholders. It must be conceded, also, that the act of the majority of the stockholders does not change the relation of the plaintiff towards the corporation. The Legislature in the exercise of its power confers upon the majority of the stockholders the power to consolidate with the other constituent companies and accept in consideration therefor such number of shares in the new or consolidated corporation as may be agreed upon. This can be done only with the consent of the Legislature. The Legislature having decided that such consolidation was promotive of the public welfare, recognized that it had no power to compel a dissenting stockholder to accept stock in the new corporation. Therefore, in the exercise of the right of eminent domain it empowers the corporation to condemn the stock of such dissenting stockholder when it can not otherwise be acquired. This power is entirely distinct from the power to amend the charter. The right of eminent domain which resides in the State, is defined to be "The rightful authority which exists in every sovereignty to control and regulate those rights of a public nature which pertain to its citizens in common, and to appropriate and control individual property for

the public benefit as the public safety, necessity, convenience
or welfare may demand." Cooley Const. Lim., 524; 1 Lewis
on Em. Domain, 1; 10 Am. Eng. Ency., 1048. This right
or power is said to have originated in State necessity and is
inherent in sovereignty and inseparable from it. It is a part
of the sovereign power of every State. *Ib. Railroad v. Davis,*
19 N. C., 451. When the State incorporated the Raleigh and
Gaston Railroad Company a contract was entered into with
the corporation, the obligation of which could not be impaired.
The State did not in respect to the property of the corporation
or its shareholders divest itself of or in any degree impair
its right of eminent domain. The Legislature could not
divest itself of a power so essential to the integrity of the
State. *Mr. Justice Daniel* in *Bridge Co. v. Dix,* 47 U. S.,
531, says: "No State, it is declared, shall pass any law
impairing the obligation of contracts; yet with this con-
cession constantly yielded, it can not be justly disputed that
in every political sovereign community there inheres neces-
sarily the right and the duty of protecting and promoting the
interests and welfare of the community at large. This power
and this duty are to be exerted not only in the highest acts of
sovereignty and in the external relations of the government;
they reach and comprehend likewise the interior polity and re-
lations of social life, which should be regulated with reference
to the advantage of the whole society. This power, denomi-
nated the *eminent domain* of the State, is, as its name imports,
paramount to all private rights vested under the government,
and those last are held in subordination to this power and
must yield in every instance to its proper exercise. * * *
A correct view of this matter must demonstrate, moreover,
that the right of eminent domain in nowise interferes with
the inviolability of contracts; that the most sanctimonious
regard for the one is perfectly consistent with the possession
and exercise of the other." 10 Am. and Eng. Ency., 1050.

"The Legislature has the power to authorize the consolidation of railroad and other *quasi*-public corporations, without the unanimous consent of their stockholders, when it makes provision for appraising and paying for the stock of dissenting stockholders. This power is entirely unaffected by the constitutional prohibition against impairing the obligation of contracts and is based upon the sovereign power of eminent domain. Corporate shares, as well as other property, are subject to the paramount necessities of the State for the promotion of public interests." Noyes on Intercorporate Rel., 51; *Black v. Canal Co.*, 24 N. J. Eq., 469. "In this busy age of restless activity and enterprise, when the brain of man is exhausting itself in his struggle with time and space, the two forces that most oppose his progress, the taking of private stock in such corporations to advance any of the purposes above indicated must be regarded as the taking of it for public benefit. There can be no doubt that a railroad company may be empowered to extend their road beyond the point to which it was built under the original grant, if proper compensation is provided for stockholders who may resist it, and I can see no difference in principle, whether the original company in order to secure a through route under one management, is authorized to take the lands of individuals or to take the property which individuals have in the stock of an existing road. In the first case, for the purpose of establishing a through route, one kind of private property, to-wit, the lands of individuals are taken by the corporation, in another case another kind of property; to-wit, the shares of stock of individuals in an existing company are authorized to be condemned. * * * The same rule applies to both cases, unless property in stock can claim a superior right to protection. This, with all other private rights, is held under the dominant right of eminent domain." In a very able opinion by *Bigelow, J.*, in *Bridge Corp. v. Lowell*, 70 Mass., 481, it is said:

"Nor is the principle thus recognized any violation of justice or sound policy, nor does it in any degree tend to impair the obligation or infringe upon the sanctity of contracts. It rests on the basis that public convenience and necessity are of paramount importance and obligation to which, when duly ascertained and declared by the sovereign authority, all minor considerations and private rights and interests must be held, in a measure and to a certain extent, subordinate. By the grant of a franchise to individuals for one public purpose the Legislature does not forever debar themselves from giving to others new and paramount rights and privileges when required by public exigencies, although it may be necessary in the exercise of such rights and privileges to take and appropriate a franchise previously granted. If such were the rule great public improvements rendered necessary by the increasing wants of society in the development of civilization and the progress of the arts, might be prevented by legislative grants which were wise and expedient in their time, but which the public necessities have outgrown and rendered obsolete. The only true rule of policy, as well as of law, is that a grant for one public purpose must yield to another more urgent and important, and this can be effected without any infringement on the constitutional rights of the subject. If in such cases suitable and adequate provision is made by the Legislature for the compensation of those whose property or franchise is acquired, there is no violation of public faith or private right. The obligation created by the original charter is thereby recognized." We have in the history of the Raleigh and Gaston Railroad Company a striking illustration of the operation of the principle so clearly stated by *Justice Bigelow.* The right to take private property by condemnation proceedings for the purpose of constructing a railroad was first asserted, recognized and enforced by this Court in *Railroad v. Davis,* 19 N. C., 456. *Ruffin, C. J.,* wrote for

a unanimous Court an able and exhaustive opinion, tracing
the power to its source and giving it the application asserted
by the defendant in this case. This opinion has always been
cited and approved in this Court as settling the law in this
State. The same public convenience or necessity which would
have justified taking the land of the citizen to open and con-
struct a highway to meet the needs of the public in 1800 was
invoked for taking the same land to meet the needs as they
existed in 1836 to construct a railroad. The advancing needs
and changed conditions in regard to transportation and travel
is deemed by the Legislature to demand the formation of a
great trunk line or interstate system of railroad in 1901.
If the Seaboard Air Line Company had, instead of consolida-
ting with the Raleigh and Gaston Railroad Company, con-
structed a separate line or track from Ridgeway to Raleigh,
every foot of land on the route necessary therefor could have
been condemned for that purpose. We can see no reason
why, in the exercise of the same inherent sovereign power,
the Legislature may not empower the corporation to con-
demn the plaintiff's stock. Whether the power is in this re-
spect wisely conferred or exercised is beyond our province
to say. This is a question for the decision of the Legislature.
We have examined with care all of the authorities cited by
the plaintiff's counsel. In those cases where the consoli-
dating acts are declared invalid, no provision is made for
assessing the value and paying for the dissenting stock. We
find no more difficulty in holding that the condemnation of
plaintiff's stock is for a public use than did *Ruffin, C. J.,* and
his learned associates in finding that the railroad was origi-
nally constructed for such use. Clark and Marshall on Pri-
vate Corp., 1051; *Railroad v. Railroad,* 83 N. C., 489. We
are of the opinion that the Legislature had the power to con-
fer on the corporation the right to condemn the dissenting
stock, and that upon a reasonable interpretation of the stat-

ute it has done so. We find no valid objection to the mode prescribed for ascertaining the value of the stock; it is expressly provided that the value so assessed must be paid before the stock is transferred. It would seem that the mode prescribed is exclusive and must be pursued. *Railroad v. McCaskill,* 94 N. C., 751. It seems to us to be the only practicable remedy. The mode of trial is free from any reasonable objection. There is another view of this case presented by the defendant's brief which we think fatal to plaintiff's action. The Board of Directors of the Raleigh and Gaston Railroad Company on April 29, 1901, met and adopted a resolution reciting that the consolidation would greatly facilitate the business and promote the interests of the company, etc. Thereupon a meeting of the stockholders was duly called and May 20, 1901, fixed as the day for such meeting. Notice thereof was duly served on the plaintiff and she filed her protest setting forth that notice of the meeting and the purpose thereof had been served on her. At the meeting she appeared by her attorney and entered her protest. The tellers reported that all of the stock, 14,988 shares, represented voted for the consolidation. It appears that the consolidation was entered into by eight separate railroad companies traversing hundreds of miles and representing millions of dollars of capital. The consolidation became operative at once, and new stock, common and preferred, to the amount of one hundred million dollars, together with bonds secured by mortgage to the amount of many million dollars, were authorized to be issued and executed. It is a matter of general and public information, and known to the Court by records before us at each term, the published reports of the Corporation Commission and other public and official sources that the consolidation of the roads forming the Seaboard Air Line system has become an accomplished fact, that vast private interests are involved and public duties assumed. The

plaintiff, instead of asserting her rights promptly by an appeal to the preventive jurisdiction of the Court, waits more than two years before invoking the equitable power of the Court to declare invalid and set aside the consolidation. It is not to be understood that courts will refuse to protect the rights of a single stockholder if invaded by the majority, however large, or refuse relief against aggressions of consolidated capital, however powerful. The Chancellor originally took jurisdiction in many cases because of the inability of the complainant to maintain his suit at law with his adversary because of his great power and large number of retainers. The question is not whether the plaintiff is without remedy, but whether the law has given to her an adequate remedy otherwise than by the exercise of the extraordinary power vested in the Court. She demands that the Court declare the charter of the Raleigh and Gaston Railroad Company forfeited; that the merger and consolidation be declared void as to her; that a receiver be appointed, etc.; that an accounting be had of the receipts of the company since the merger, etc. It is an elementary principle of equity jurisprudence that relief is granted to the vigilant and will be refused when there has been unreasonable delay amounting to *laches.* This is especially true where valuable rights have been acquired by innocent persons. This familiar principle was announced and enforced by this Court in *Pender v. Pittman,* 84 N. C., 372, *Smith, C. J.,* saying: "But this equity ought to be promptly asserted and not deferred until by a sale other interests may intervene rendering it inequitable, if practicable, to reverse what has been done and restore matters to their former condition." In that case it was held: "That an injunction against carrying out a contract of sale made under a power contained in a mortgage will not be granted when the relief to which the plaintiff considers himself entitled is not sought

until the sale has been made and the rights of a purchaser have intervened."

*Mr. Noyes* says: "Acquiescence for an extended period, during which time the interest of third parties have intervened, may itself constitute *laches* and prevent a stockholder from attacking a consolidation even on the ground of fraud." Intercorporate Rel., 49. The authorities upon this subject are uniform and abundant. As was said by *Sir John Romilly,* Master of the Rolls, "Shareholders cannot lie by sanctioning or by their silence at least acquiescing in an arrangement which is *ultra vires* of the company to which they belong, watching the result; if it be favorable and profitable to themselves abide by it and insist on its validity, but if it prove unfavorable and disastrous, then to institute proceeding to set it aside." *Gregory v. Patchett,* 33 Beav., 595. The proposition is tersely stated by *Van Fleet, V. C.,* in *Rabe v. Dunlop,* 51 N. J. Eq., 48: "If he wants protection against an *ultra vires* act he must ask for it with sufficient promptness to enable the Court to do justice to him without doing injustice to others." *McVickers v. Ross,* 55 N. Y. Sup. Court, 247; *Watts Appeal,* 78 Pa. St., 370; *Kent v. Mining Co.,* 78 N. Y., 159.

We think that in any view of the case the plaintiff is not entitled to the extraordinary relief demanded. We are at a loss to see how it is practicable to preserve the status of the corporation, as she suggests, for her benefit. We notice that the defendant in its answer says that, notwithstanding the failure of the plaintiff to proceed to have the value of her stock ascertained within the time and by the method prescribed by chapter 168, Acts 1901, it is now willing to pay her the value thereof. His Honor granted to the plaintiff, with the assent of the defendant, the right to amend her complaint and have the value of her stock ascertained. He also directs upon the trial of that issue that the books of the cor-

poration be produced, etc. We think that the order of his Honor fully protects the rights of the plaintiff. She will have thirty days from the next term of the Superior Court to amend her complaint and proceed to have the value of her stock ascertained and judgment rendered therefor. Upon a full and careful consideration of the record, the agreement of counsel and the authorities, we find no error in the judgment of his Honor. Let it be so certified.

No Error.

DOUGLAS, J., dissenting. I wished to express my views more fully upon this case, but circumstances which I regret confine me to a few lines. I do not see how the right of eminent domain, one of the sovereign powers of the State, can be invoked in favor of railroad consolidation where not a foot of additional road is built and nothing is added to the public convenience. Private property can be taken only for a public use. What use can the public make of the private stock of a corporation aside from its road-bed and other material property which are already devoted to the use of the public? Is it not establishing a dangerous principle to permit the consolidation of railroads without the consent of their minority stockholders—dangerous not only to private rights, but equally so to the great economic principle of railroad competition in which the public is so vitally interested?