## MANNING MAYFIELD

*v.*

## THE ALTON RAILWAY, GAS AND ELECTRIC COMPANY.

*Opinion filed October 25, 1902.*

1. CORPORATIONS—*act authorizing consolidation is a part of subsequent contracts of subscription to stock.* One who purchased stock in a corporation after the passage of the Consolidation act must be held to have purchased with knowledge that the statute was a part of his subscription contract, and that if, at any future time, representatives of two-thirds of the stock of his company should, in compliance with the law, vote to consolidate with another company he would be bound by their action.

2. SAME—*stockholder not consenting to consolidation cannot compel repayment of his money.* The lawful consolidation of a private corporation, organized under the laws of this State, with another "of the same kind and engaged in the same general business and carrying on its business in the same vicinity," also organized under the general statute of this State, both being organized after the passage of the statute authorizing such consolidation, does not give a dissenting stockholder in the first corporation the lawful right to demand of the consolidated company payment in cash for his shares of stock, even though the stock in the second corporation is not paid for, there being nothing to show it is not subscribed in good faith and collectible.

*Mayfield* v. *Alton Railway, etc. Co.* 100 Ill. App. 614, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. WILLIAM HARTZELL, Judge, presiding.

Appellant brought this suit in the circuit court of Madison county for the use of one Smith, to recover the value of shares of capital stock owned by him in a corporation previously consolidated with another corporation forming the appellee, which was made defendant. To his declaration a general demurrer was overruled, and the defendant appealed to the Appellate Court for the Fourth District, where the judgment of the circuit court was reversed and the cause remanded. (95 Ill. App. 146.)

On remandment of the case an immaterial amendment was made to the declaration, and the defendant again demurred generally, which was sustained. The plaintiff elected to stand by his amended declaration, and judgment was entered against him for costs, from which he appealed. The Appellate Court adhered to its former decision and affirmed the judgment below. (100 Ill. App. 614.) To reverse the latter judgment this appeal is prosecuted.

The declaration consists of a single special count copied at length in the last opinion of the Appellate Court, and need not be repeated here. For our purpose the following statement of material facts alleged will suffice:

On July 17, 1895, the Alton Railway and Illuminating Company was organized under the general statute, with a capital stock of $250,000, divided into twenty-five hundred shares of $100 each, fully subscribed and paid up, the plaintiff owning fifty shares of the par value of $5000. The company owned a street car line in the city of Alton and certain other tangible property and choses in action of the aggregate value of $250,000. Subsequently another company was organized under the same law, called the "Alton Railway, Gas and Electric Company," with a like capital stock of $250,000, of twenty-five hundred shares of $100 each, which was also fully subscribed and issued but upon which the subscribers had paid nothing. The objects of these corporations were substantially the same, viz., they were "of the same kind and engaged in the same general business in the same vicinity," as provided by paragraph 65 of chapter 32. (Starr & Cur. Stat. p. 1032.) On the 8th of August, 1899, the former company was consolidated with the latter under the provisions of the statute of this State above referred to, authorizing such consolidation. The capital stock of the consolidated company was increased to $500,000, divided into five thousand shares of $100 each, and in lieu of the shares held in the first named company an equal number of

shares of the consolidated corporation were to be issued upon the surrender of the certificates therefor. The declaration does not question the legality or regularity of the consolidation proceedings in any way whatever, nor deny that votes representing two-thirds of all the stock of plaintiff's company were lawfully cast in favor of such consolidation. It does, however, aver that plaintiff did not participate in the consolidating proceedings, and refused to surrender his certificate of stock or accept a like number of shares in the defendant company, but demanded of it pay therefor. The only attempt to charge fraudulent or wrongful conduct upon those who effected the consolidation, is the averment that by increasing the stock of the defendant company and doubling the number of shares and proposing to give the plaintiff only the same number of shares in the consolidated company he held in his constituent company, the defendant undertook "to water the stock of the plaintiff and to diminish his interest, relatively, in the assets and tangible property of said defendant company one-half, and to give him an interest in the defendant company of one one-hundredth in lieu of one-fiftieth interest in said constituent company, and to thereby diminish the value of his stock one-half."

JOHN G. IRWIN, for appellant:

Without a statute, and unless otherwise provided in the statute authorizing a consolidation, or by the terms of agreement between the companies, the consolidated corporation assumes the liabilities of the companies composing it, and they may be enforced by proceedings against the new company. Beach on Private Corp. sec. 343; *Railway Co.* v. *Skidmore*, 69 Ill. 566.

The holders of stock in the original companies do not become, *ipso facto*, stockholders in the consolidated company, but only have the right to become so by surrendering their old shares. There is no power to force a

stockholder of the old corporation to join the new corporation, and to receive stock in it on the surrender of his stock in the old company. Beach on Private Corp. sec. 351; *Clearwater* v. *Meredith,* 1 Wall. 29.

Legislative consent to consolidation of existing corporations has the effect of dissolving the former corporations, and, at the same instant, of creating a new corporation, with property, liabilities and stockholders derived from the old, upon such terms and conditions as may be prescribed by the act of consolidation. Beach on Private Corp. chap. 17, sec. 338; *McMahon* v. *Morrison,* 16 Ind. 172; *Railroad Co.* v. *Lauman,* 30 Pa. St. 42; *Pullman Car Co.* v. *Railway Co.* 115 U. S. 187; *Railroad Co.* v. *Palmes,* 109 id. 244; *Railroad Co.* v. *Georgia,* 98 id. 359; *Railroad Co.* v. *Maine,* 96 id. 499; *Shields* v. *Ohio,* 95 id. 319; *Clearwater* v. *Meredith,* 1 Wall. 25; *Cooper* v. *Corbin,* 105 Ill. 224; *Railway Co.* v. *People,* 123 id. 467; *Kincaid* v. *People,* 139 id. 216.

Upon consolidation, the constituent companies, as independent entities, would cease to exist, and all their duties and obligations, whether to the public or to private persons, would be cast upon and must be assumed and discharged by the new consolidated company. *Railway Co.* v. *People,* 123 Ill. 467; *People* v. *Railroad Co.* 120 id. 48.

Upon dissolution of a corporation each stockholder has the right, as a general rule and in the absence of a special agreement to the contrary, to have the partnership property converted into money, whether such sale be necessary for the payment of debts or not. *Mason* v. *Pewabic M. Co.* 133 U. S. 50.

In conferring authority to consolidate, the legislature is not to be held to have intended to compel a dissenting stockholder to transfer his interest because a majority consented to the consolidation. To so hold would be to impair the obligation of a contract. *Clearwater* v. *Meredith,* 1 Wall. 29.

Authority to consolidate may be granted if provision be made for a just compensation for the shares of such

stockholders as dissent.    Power to thus take the shares is strictly construed, and will not warrant the taking of the shares of a dissenter for the purpose of leasing. *Mills* v. *Railroad Co.* 41 N. J. Eq. 1.

A majority cannot force a dissenting minority into such an arrangement without first purchasing their shares at market value, though no provision be made for com-pensation therefor. *Lauman* v. *Railroad Co.* 30 Pa. St. 42.

It is not in the power of the courts to decree that the stock of shareholders dissenting from a plan of consoli-dation shall be condemned, appraised and sold for the purpose of quieting factious opposition. *Mills* v. *Railroad Co.* 41 N. J. Eq. 1.

When a consolidation is effected wrongfully and against the protest of a shareholder, the consolidated company is liable to him for the value of his shares. Beach on Private Corp. sec. 355; Taylor on Corp. sec. 536; *Railroad Co.* v. *Bremond,* 53 Tex. 96.

LEVI DAVIS, and HENRY S. BAKER, for appellee:

When the legislature retains the power to alter or amend the charter of a corporation it may authorize a consolidation without the unanimous consent of the stock-holders.    6 Am. & Eng. Ency. of Law, (2d ed.) 807.

A provision in the charter of a corporation authoriz-ing consolidation is a part of the contract between the stockholders, and in such case a' consolidation may be effected without unanimous consent of the stockholders. 6 Am. & Eng. Ency. of Law, (2d ed.) 806, and cases cited.

A stockholder becoming a subscriber after the pas-sage of an act authorizing consolidation of the corpora-tion with another company cannot prevent a consolidation for want of consent on his part.    6 Am. & Eng. Ency. of Law, (2d ed.) 808.

Where the consolidation is authorized by the charter of the constituent corporation, or by an act in force at the time of the subscription by a stockholder to the stock

of one of the constituent corporations, or under the power
of the legislature to alter or amend the charters of the
constituent companies, the consolidated corporation may
enforce subscriptions to the stock of constituent corpo-
rations even against dissenting stockholders.    They are
not released by the consolidation. *Sprague* v. *Railroad Co.*
19 Ill. 174; *Railroad Co.* v. *Earp*, 21 id. 291; *Plankroad Co.* v.
*Thatcher*, 1 Kern. 102; *Railroad Co.* v. *Brown*, 26 Ohio, 223;
*Railroad Co.* v. *Phelps County*, 25 Kan. 261; *Livingston County*
v. *Bank*, 128 U. S. 102; *Nugent* v. *Putnam County*, 86 id. 241.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On the allegations of this declaration the general
demurrer raises the single question, does the lawful con-
solidation of a private corporation organized under the
statutes of this State, with another private corporation
"of the same kind and engaged in the same general busi-
ness and carrying on its business in the same vicinity,"
also organized under the general statute of the State,
both corporations being organized since the adoption of
the act of 1872, amended in 1889, providing for the con-
solidation of corporations, give a dissenting stockholder
in the first company a lawful right to demand of the new
or consolidated company payment in cash for his shares
of stock?

The Consolidation act above mentioned authorizes
the consolidation of one corporation with another upon
conditions expressed in the act, all of which are shown
by the declaration to have existed, or which, from the
absence of averments to the contrary, must be presumed
to have existed at the time of the consolidation, on Au-
gust 8, 1899. The authorities are to the effect that when
the Alton Railway and Illuminating Company was organ-
ized and the plaintiff purchased and paid for fifty shares
of its capital stock, the consolidation statute being in
full force and effect, he must be held to have purchased
his stock with knowledge thereof, being bound to know

that if, at any time in the future, representatives of two-thirds of all the stock of his company should, in compliance with the requirements and conditions of that law, vote to consolidate his company with another, he would be bound by their action, and that the statute entered into and became a part of his contract of subscription. (6 Am. & Eng. Ency. of Law,—2d ed.—808.) In *Mansfield, Coldwater and Lake Michigan Railroad Co.* v. *Brown*, 26 Ohio St. 223, it is said: "And it must be observed that at the date of defendant's subscription the statute of 1856, under which consolidation was effected, was then in force. * * * This contract of subscription must be construed as having been made with reference to the Consolidation act, by which they are bound as fully as if its provisions had been copied into their contract of subscription."

In *Nugent* v. *Supervisors of Putnam County*, 19 Wall. 241, the question arose upon demurrer to a replication to pleas, the question being whether bonds issued to the consolidated company upon a vote of subscription to one of the constituent companies were valid. The Supreme Court of the United States, after stating the general rule that a subscriber to the stock of a company is released from obligation to pay his subscription by a fundamental alteration of the charter, says: "But while this is true as a general rule, it has no application to a case like the present. The consolidation of the Kankakee and Illinois River Railroad Company with another company was no departure from its original design. The general statute of the State approved February 28, 1854, authorized all railroad companies then organized or thereafter to be organized to consolidate their property and stock with each other, and with companies out of the State whenever their lines connect with the lines of such company out of the State. The act further declared that the consolidated companies shall have all the powers, franchises and immunities which the consolidating companies, respectively, had before their consolidation. * * *

The special charter of the Kankakee and Illinois River Railroad Company contained in its eleventh section an express grant to the company of authority to unite or consolidate its railroad with any other railroad or railroads then constructed.   *   *   *   It was therefore contemplated by the legislature, as it must have been by all the subscribers to the stock of the company, that precisely what has occurred might occur.   Subscribers must be presumed to have known the law of the State and to have contracted in view of it,   *   *   *   . hence the reason of the general rule we have conceded does not exist in this case, and consequently the rule is inapplicable."   Numerous cases from England are then cited in support of the proposition "that a subscriber for the stock of the company is not released from his engagement to take it and pay for it by any alterations of the organization or purpose of the company which, at the time the subscription was made, were authorized either by the general law or by the special charter; and a clear distinction is recognized between the effect of such alterations and the effect of those made under legislation subsequent to the contract of subscription."   It is then further said:  "The American authorities are equally explicit.   They uniformly assert that the subscriber for stock is released from his subscription by a subsequent alteration of the organization or purpose of the company only when such alteration is both fundamental and not provided or contemplated by either the charter itself or the general laws of the State,"—citing numerous authorities.   The court in the same opinion distinguishes the former case of *Clearwater* v. *Meredith*, 1 Wall. 25, much relied upon by counsel for appellant.

In Beach on Private Corporations (vol. 1, sec. 353,) it is said:  "The general rule is, that the consent of every stockholder is necessary for consolidation, and those who dissent cannot be compelled to assent, for shareholders cannot be forced into relations with new corporations

without their consent. * * * Though shareholders can
not be forced into a new corporation without their con-
sent, statutes in force at the time of their subscription
which authorize a consolidation are regarded as entering
into and being a part of their subscription contract; and
under statutes of this character, purchasers of stock are
presumed to have bought it in contemplation of a prob-
able transfer of the property by a majority vote of the
stockholders."

Of course, statutes authorizing consolidation after
subscriptions have been made cannot be held to compel
a dissenting stockholder to transfer his subscription to
the consolidated company, because to do so would impair
the obligation of his contract. But if a statute already
in existence to that effect enters into and becomes a part
of his contract, then, manifestly, there is no impairment
of his contract by requiring him to submit to the required
majority vote for the consolidation; and with this dis-
tinction in view, so far as we have had access to the au-
thorities cited and relied upon by counsel for appellant,
they are consistent with *Nugent* v. *Supervisors of Putnam
County, supra,* and other like authorities.

Counsel for appellant says: "We concede that a pro-
vision in a charter authorizing consolidation is a part
of the contract between the stockholders, and enables
two-thirds to effect a consolidation without the consent
of the other third; but that is a different thing from the
confiscation of the shares by means of this power." We
do not understand how the concession can be reconciled
with the authorities above referred to and the plaintiff's
claim still be maintained. It is said the act does not
undertake to declare the effect of consolidation upon in-
dividual rights of the members. The statute, entering
into and becoming a part of the contract of subscription,
does, in effect, declare the result upon the individual
rights of the members to be the same in the consolidated
company as they were in the original constituent com-

pany. As we understand the authorities above cited, (and we have been unable to discover any to the contrary,) if the plaintiff had subscribed for fifty shares of the capital stock of the Alton Railway and Illuminating Company and had not paid for the same at the time of this consolidation, the new or consolidated company could have compelled him to do so. That, certainly, is the holding in *Nugent* v. *Supervisors of Putnam County, supra.* Then, upon what principle can it be said that, having made payment, he can recover back from it the value of his stock? While, as we have said, the declaration avers that the plaintiff's stock has been diluted or watered so as to decrease its value one-half, the facts averred, if material in this suit, do not sustain the conclusion. It is true, he is given but fifty shares of stock out of five thousand, whereas he held fifty out of twenty-five hundred, or, as he says, one one-hundredth in the new company in lieu of one-fiftieth in the old. But the new company has exactly twice as much capital stock as the old. It is true, one-half of that stock had not been paid for at the time of the consolidation; but there is nothing in the declaration to show that it was not subscribed for in good faith and is of the par value of $250,000, which, as we have seen, can be collected by the new company.

We attach no importance to the claim and argument of counsel for the appellant that his stock has been confiscated; that the attempt is to coerce him, against his will, to become a member of the new company, in the absence of all allegations of collusion, fraud, irregularity or illegality in the consolidation of the two corporations.

We think the judgment of the Appellate Court affirming the decision of the circuit court is right, and should be affirmed. *Judgment affirmed.*