J. M. SWAN, *Receiver, v.* GEORGE R. BARNES, *Committee, etc.*

(No. 8256)

Submitted January 8, 1936. Decided February 25, 1936.

*H. H. Rose,* for plaintiff in error.
*Victor H. Shaw,* for defendant in error.

KENNA, JUDGE:

This is a writ of error obtained by George R. Barnes, Committee of J. Walter Barnes, an insane person, to a judgment for $2,515.67 rendered by the Circuit Court of Marion County against him in favor of J. M. Swan, receiver of the Union National Bank of Fairmont, West Virginia. The judgment is based upon an assessment of one hundred per centum upon stock of the par value of $2,000.00 alleged by the receiver to have been owned by

J. Walter Barnes in the bank, an insolvent national banking association.

The case was submitted to the court, without a jury, on an agreed statement of facts from which it appears that the Union National Bank of Fairmont was organized November 29, 1929, by merger and consolidation of the Peoples National Bank of Fairmont, the Home Savings Bank of Fairmont, and the Fairmont Trust Company; that then, and for a long time theretofore, J. Walter Barnes was, and had been, the owner of twenty-five shares of the capital stock of the Fairmont Trust Company of the par value of $100.00; that after the merger, though no certificate of stock was issued to J. Walter Barnes, his name was carried on the books of the Union National Bank of Fairmont as the owner of one hundred shares of the capital stock of that bank, of the par value of $20.00 each, it having been provided in the terms of the merger that for each share of capital stock of the Fairmont Trust Company, there should be issued four shares of the capital stock of the Union National Bank; that the Union National Bank transacted business from the date of its organization until the 16th day of December, 1930, when it became insolvent and was closed; that on that date, J. M. Swan, having been duly appointed, gave bond and qualified as its receiver; that on the 9th of February, 1931, the Comptroller of the Currency of the United States laid an assessment of one hundred per centum upon the shareholders of the Union National Bank; that at the time of the organization of the Union National Bank, J. Walter Barnes was, and for a number of years theretofore had been, insane and was confined in one of the state hospitals for the insane; "that the Superintendent of said hospital, and the members of the family of said J. Walter Barnes and divers other persons acquainted and in touch with him during the said period will testify that during the whole of said time he was wholly and absolutely insane; that the fact of his confinement in said hospital, and his reputed insanity, was known to the principal executive officer of the said three merging banks, to-wit, The Peoples National Bank of Fairmont, The

Home Savings Bank, and the Fairmont Trust Company, at, before, and during all the proceedings taken to accomplish said merger; that the said J. Walter Barnes, as a stockholder of the Fairmont Trust Company, at the meeting of stockholders called for that purpose, did not vote in favor of the merger of the said three banks; nor appear or take any part in said meeting, or any other proceedings involved in said merger, nor was such vote cast or such part taken on his behalf by any proxy or other person authorized or pretending to be authorized to act for said J. Walter Barnes;" that on the 11th of August, 1926, J. Walter Barnes executed to his wife, Olive C. Barnes, a power of attorney; that in the years 1927, 1928 and 1929 dividend checks issued by the Fairmont Trust Company to J. Walter Barnes were indorsed for payment and cashed by Olive C. Barnes, attorney in fact; that on the 31st of December, 1929, the Union National Bank declared its first and only dividend, and that a dividend check of $70.00, payable to J. Walter Barnes as the purported owner of one hundred shares of stock, was indorsed by Olive C. Barnes, who received payment thereof; that in the month of July, 1932, in the Circuit Court of Marion County, West Virginia, J. Walter Barnes was adjudged insane and George R. Barnes was appointed committee; that no part of the assessment against J. Walter Barnes has been paid.

The consolidation of the banks hereinabove mentioned was effectuated under an Act of Congress, passed February 25, 1927, being section 34a of Title 12 of the United States Code Annotated.

There are two questions presented for decision on the basis of the record before us: First, did J. Walter Barnes become a stockholder in the merged national bank? If he did, his estate is bound by the double assessment upon his stock. Second, in the event that the circumstances of the merger were such that J. Walter Barnes did not, in fact, become a stockholder in the merged national bank, are the events since the merger shown to have been such that his committee is now estopped to assert the fact that he did not become a stockholder in the

merged national bank as a defense to the collection of the double liability now sought to be imposed upon the stock standing in his name on the books of the merged national bank?

The first question is by no means free from difficulty, but we are of the opinion, arrived at after exhaustive investigation, that where the statute under which a consolidation or merger is effected was in force at the time the constituent corporation of the objecting stockholder was organized, or, possibly, at the time the stock of the objecting stockholder in the constituent company was issued, then the objecting stockholder is bound by the terms of his contract of stock purchase of which the statute in question became a part, and cannot object to a consolidation or merger carried out upon fair terms pursuant to the statute. *Mayfield* v. *Alton Railroad, Gas & Electric Co.*, 198 Ill. 528, 65 N. E. 100; *Jones* v. *Missouri-Edison Co.*, (C. C. A.) 144 Fed. 765; *Norton* v. *Union Traction Co.*, 183 Ind. 666, 110 N. E. 113, Ann. Cas. 1918A, 156; *Bonner* v. *Terra Haute & I. R. Co.*, (C. C. A.) 151 Fed. 985. If, however, the statute under which the consolidation or merger was effected was not in force at the time the shares of the objecting stockholder in the constituent company were issued, then his shares are not subject, over his objection, or without his consent, either express or implied, to be carried into the consolidation or merger. *Clearwater* v. *Meredith*, 68 U. S. 25, 17 L. Ed. 604; *Botts* v. *Simpsonville & B. C. Turnpike Co.*, 88 Ky. 54, 10 S. W. 134, 2 L. R. A. 594. See also, on kindred principles: *Spencer* v. *Seaboard Airline Railway Co.*, 137 N. C. 107, 1 L. R. A. (N. S.) 604; *Kenosha-Rockford & Rock Island Railroad Co.* v. *Marsh*, 17 Wis. 13; and *Lauman* v. *Lebanon Valley Railroad Co.*, 30 Pa. 42, 72 Am. Dec. 685. It is not necessary to discuss here the extent to which, if at all, an objecting stockholder in a constituent company may actually prevent a consolidation or merger under a statute enacted subsequent to his becoming a stockholder in such constituent company.

Prior to the passage of the Act of February 25, 1927, there was no federal statute under which the merger of a bank organized under the laws of a state with a national bank could be effected. This procedure is, of course, to be distinguished from that of a state bank becoming a national bank under the Act of December 23, 1913, 12 U. S. C. A., section 35, p. 83. J. Walter Barnes acquired his stock in the Fairmont Trust Company sometime prior to the year 1926. The Act of Congress, under which the consolidation or merger was effected, was passed February 25, 1927. As we have said, under what we regard as the better reasoned cases, J. Walter Barnes' stock in Fairmont Trust Company was not bound by the terms of the act under which the merger was effected. That act was no part of the contract that he made, or that his predecessor in the ownership of the stock that he purchased made, by virtue of the stock purchase. It requires no citation of authority to sustain the proposition that the rights and relationship arising upon the purchase of stock in a corporation are contractual, and that no state law can materially alter the rights arising under such a contract.

But it may be urged that since the Act of Congress makes provision for assessing the fair market value of the stock of a stockholder in a constituent corporation who objects to the merger and for the payment to such stockholder in cash of that value, that the objecting stockholder has no fair right to complain, even though the proposed merger is to take place under an act passed subsequent to his acquiring his shares. We do not believe that the question that might arise in the case of a person *sui juris* on this phase of the matter is presented for decision in the case before us. Those interested in pursuing the question of the extent to which provision for the retirement of shares at their fair market value operates to prevent a dissenting stockholder in a constituent company from objecting to a consolidation or merger under an act passed since he acquired his shares, may do so by running down the cases cited in the exhaustive annotation to the case of *Spencer* v. *Seaboard Airline*

*Railroad Co.,* 1 L. R. A. (N. S.) 604, above cited. These cases proceed upon the theory of eminent domain, and reason that the shares of the dissenting stockholder, which are to all intents and purposes condemned, cannot be permitted to stand in the way of a merger or consolidation in the public interest. On this theory, so these cases reason, the shares were acquired subject to be taken from the stockholder for public use upon just compensation being made under the law. But there has been no compensation made in this case. It is true that the statute places the duty of taking the initiative in this matter upon the stockholder. He must object and demand the appraisement of his stock and the payment of its fair value.

But it is to be observed that the federal statute under which this merger was effected (Title 12, U. S. C. A., Par. 34A) provides that, upon the stockholder who dissents to the merger availing himself of the provisions of the statute to have his shares appraised and paid for, "he shall be entitled to receive the value of the shares so held by him * * * ." In other words, the dissenting stockholder receives the value of his shares in the constituent bank in which they were held. The provision is not intended to draw the dissenting stockholder into the merger and to make him a stockholder in the merged bank. If shares be condemned under this provision, they are not the shares of the consolidated bank, but they are the shares of the constituent bank. It will thus be seen that by taking advantage of the provision of the statute to have his shares appraised and paid for, the dissenting stockholder is effectively prevented by the operation of the statute itself from becoming a stockholder in the merged bank. But supposing a stockholder, as here, does not dissent and avail himself of the terms of the statute providing for the payment for his shares in the constituent bank, does not consent to the merger, and, suppose further, that his stock was acquired prior to the enactment of the statute providing for the merger? Then, regardless of what rights may be left to him as a stock-

holder in the constituent bank, there is still no theory upon which he can be regarded as a stockholder in the merged bank.

Still another question arises. The act under which this merger was effected is a federal statute. The consideration discussed herein arises under the rule that the states are prohibited by the Federal Constitution from passing laws that impair the obligation of a contract. In West Virginia, our own constitution carries the same provision. There is no inhibition upon Congress passing an act which impairs a contract. However, this particular Act of Congress provides, furthermore, that it shall not operate in violation of any state law. Since our own constitution prohibits the impairment of the obligation of a contract, we are of the opinion that the proviso of the act in question, subordinating its terms to the laws of the state, prevents us from so construing the federal act as to make it impair a contract entered into in this state. To do so, would cause the federal act to operate in clear contravention of the laws of the State of West Virginia. We are, therefore, of the opinion that, since the federal act authorizing the merger of a state bank with a national bank, under its own provisions, can no more be permitted to impair the obligation of a contract in this state than could a state law, the cases cited to sustain the proposition that to subject an objecting stockholder to the terms of a statute authorizing the merger, which becomes effective after the purchase of his stock, impairs the obligation of his stock purchase contract, are applicable to the circumstances of this case. In this connection, consideration has been given to Code, 31-1-8, reserving to the legislature the right to alter the charter of any corporation and to alter or repeal any law applicable to any corporation, and to the cases construing that section. However, since, in this case, the legislature at the time of the consolidation had not seen fit to exercise the right thus reserved to it, we are of the opinion that the federal statute cannot be permitted to so operate.

The second question is whether the committee of J. Walter Barnes is estopped, in this proceeding, to deny

that he became a stockholder in the merged national bank. The fact that Olive C. Barnes, acting under a power of attorney, executed by J. Walter Barnes in August, 1926, received a dividend check of $70.00 from the merged national bank, indorsed it and cashed it, is urged as a strong circumstance in estoppel. The check was for a dividend declared in December, 1929. J. Walter Barnes had become insane some time prior to that time, and under well recognized principles, the agency created by the power of attorney not being coupled with an interest, his insanity revoked that agency. So, at the time she received the dividend check, Olive C. Barnes had no authority to act for or bind her husband, J. Walter Barnes, by virtue of the power of attorney upon which the contended estoppel rests. And while it frequently happens that principles analogous to the principles upon which estoppel rests are invoked where insane persons are concerned, we are of the opinion that the general circumstances of this case are not sufficient to bring them into play.

For the reasons herein stated, the judgment of the Circuit Court of Marion County is reversed, the finding of that court set aside, and the case remanded for such further proceedings in conformity with this opinion as may be necessary.

*Reversed and remanded.*

LITZ, JUDGE, concurring:

I agree with the conclusion of the court, but am inclined to the opinion that it should be placed upon the insanity of Barnes at the time of the consolidation of the banks rather than the fact that he acquired his stock in the Fairmont Trust Company (one of the constituent banks) before the passage of the federal act authorizing the merger. The statute is specific in its requirements of due process in effecting a legal consolidation. It provides that any two or more national banking associations located within the same county, city, town, or village may, with the approval of the Comptroller of the Currency, consolidate into one association under the charter

of either existing banks, on such terms and conditions as may be lawfully agreed upon by a majority of the board of directors of each association proposing to consolidate, and be ratified and confirmed by the affirmative vote of the shareholders of each such association owning at least two-thirds of its capital stock outstanding, at a meeting to be held on the call of the directors after publishing notice of the time, place, and object of the meeting for four consecutive weeks in some newspaper published in the place where the said association is located, and if no newspaper is published in the place, then in a paper published nearest thereto, and after sending such notice to each shareholder of record by registered mail at least ten days prior to said meeting; and that when such consolidation shall have been effected and approved by the comptroller any shareholder of either of the associations so consolidated who has not voted for such consolidation may give notice to the directors of the association in which he is interested within twenty days from the date of the certificate of approval of the comptroller that he dissents from the plan of consolidation as adopted and approved, whereupon he shall be entitled to receive the value of the shares so held by him. The enumerated steps in the process of consolidation must, therefore, be observed in order to bind non-consenting stockholders. Although a judgment against an insane person, before an adjudication of insanity, is, generally, voidable and not void, I do not believe that the interests of Barnes who was, according to the agreed evidence, a lunatic, confined in an insane asylum to the knowledge of the officials of the merging banks at the time of the consolidation, could have been legally affected thereby. The stockholders of the constituent banks are bound on the basis of consent or acquiescence after notice in compliance with the act. The statute was considered and applied in *Littrell* v. *Craig*, 1 Fed. Supp. 491, an action against a non-consenting stockholder who had received notice in compliance with the act. In holding the stockholder liable for stock assessments by the receiver of the consolidated bank, the court said: "Defendant knew when he received the no-

tice of the meeting of the stockholders of the Fayette Title & Trust Company (in which he was a stockholder) to be held October 28, 1931, that it was proposed to take action on a contract for the consolidation of the trust company and the bank. He was hence chargeable with notice of the action taken at that meeting, which included the approval by the stockholders of the agreement aforesaid, the authorized issuance of stock in the consolidated bank to the defendant, and the arrangement for the payment of the cash consideration of $150,000 by the building company. He also was visited with knowledge of the law that, if he desired to dissent from such consolidation, he had a right to have his stock appraised and to receive the price fixed therefor." As the statute contemplates the consent or acquiescence, after notice, of the stockholders, I see no theory upon which one notoriously incapable of consent or acquiescence could be affected by the consolidation except through a legally selected committee. The statute affords each stockholder the privilege, after notice, of either (1) consenting to the merger, or (2) demanding the value of his stock.