Taft, J.
Prom the foregoing statement of facts, it is apparent that the proceedings taken for the conversion of defendant corporation into a federal savings and loan association fully complied with the requirements of Section 9660-2, General Code, and with the applicable federal laws and rules and regulations thereunder. However, plaintiffs contend that, since Section 9660-2, General Code, was not enacted until 1934, which was 18 years after the incorporation of defendant corporation, the provisions of that statute cannot be applied so as to alter the rights of stockholders against the corporation or the rights of stockholders inter se without impairing the obligation of the contract governing those rights.
It is well settled that the charter of a corporation organized under general laws, as was defendant corporation, consists of its articles of incorporation and *132 the laws applicable thereto when such articles are filed. 13 American Jurisprudence, 215, Section 73. Both parties concede that the charter of a corporation constitutes a contract between the state and the corporation, between the corporation and the stockholders, and between the stockholders inter se; and that that contract may govern and control the question as to whether and the extent to which rights of the stockholders against the corporation and of the stockholders inter se may be altered by the corporation’s exercise of its powers. See Schaffner v. Standard Boiler & Plate Iron Co., 150 Ohio St., 454, 83 N. E. (2d), 192. See annotation, 79 A. L. R., 624, 626.
Plaintiffs have argued that the reserved power of the state to alter or repeal general laws under which corporations may be formed (see Section 2, Article XIII of the Constitution) does not justify modification of that contract, where the modification relates to those features dealing with such rights of stockholders. In support of that argument reference has been made especially to the decision of this court in Wheatley, Trustee, v. A. I. Root Co., 147 Ohio St., 127, 69 N. E. (2d), 187.
However, as we view the facts in the instant case, it is not necessary to determine whether such reserved power of the state may justify such a modification of that contract.
Although defendant corporation was incorporated in 1916, there was an agreement in 1943 between another building and loan association and the defendant corporation under which the other building and loan association was merged into the defendant corporation, which was referred to in that agreement as “the consolidated corporation.” This agreement was made, adopted and filed pursuant to and as required by Section 8623-67 et seq., General Code, providing for the *133 merger or consolidation of corporations organized under any corporation act of the state. Thereafter, provision was made for the rights of dissenting stockholders of defendant corporation as provided for in those statutes relating to such a merger or consolidation. See Roessler v. Security Savings & Loan Co., 147 Ohio St., 480, 72 N. E. (2d), 259.
By reason of the provisions of Section 8623-68, General Code, as it then read, which stated the effect of such a merger, the merger agreement operated “as amended articles of” defendant corporation, and defendant corporation thereafter had all “rights, capacity * * * power * * * and authority” then “conferred or provided by the laws of the state ’ ’ governing ‘ ‘ such corporation and conferred or provided by the agreement. ’ ’
It follows that the 1943 merger agreement now constitutes the articles of incorporation of defendant corporation.
That agreement provides in part:
“Fourth. The purpose or purposes for which the consolidated corporation is formed are:
“To raise money to be loaned to its members and others, and generally to do all things and transact all business authorised by the laws of Ohio to be done and transacted by building and loan associations.
i Í # * %
“Thirteenth. Upon this agreement becoming effective, the consolidated corporation shall be possessed of all rights, capacity, privilege, power, franchises and authority conferred or provided by the laws of the state of Ohio which shall govern such corporation * * (Emphasis added.)
As has. been pointed out in the statement of facts, Section 9647 et seq., General Code, specify the powers which a building and loan association shall have. Ji e of the powers so specified is the power to convert into *134 a federal savings and loan association provided for in Sections 9660-1 and 9660-2, General Code. Those statutes were in full force and effect and in the same form when this merger agreement was made, adopted and filed with the Secretary of State.
Those statutes represented an offer to defendant corporation and its stockholders of the powers therein specified. The merger agreement, when made, adopted and filed, became the amended articles of incorporation of defendant corporation and clearly represented, as the terms hereinbefore quoted therefrom indicate, an acceptance of the offer of those powers. The resulting contract is binding, not only upon defendant corporation but upon its stockholders. See Shields v. State, 26 Ohio St., 86 (affirmed 95 U. S., 319, 24 L. Ed., 357); Sims v. Street Rd. Co., 37 Ohio St., 556, 568, 569, 570; Mansfield, C. & L. M. Rd. Co. v. Brown, 26 Ohio St., 223, 238, 239.
It is contended that, since the 1943 merger agreement provided for a merger under which defendant corporation’s existence was to continue and not for a consolidation under which defendant corporation’s existence would end, there could be no alteration of the provisions of the charter of defendant corporation, notwithstanding the provisions of Section 8623-68, General Code, to the effect that the merger agreement should operate as amended articles of incorporation of the corporation whose existence was to continue after the merger and notwithstanding the provisions of that statute that such corporation should thereafter have “all rights, capacity * * * power * * ® and authority” (hen “conferred or provided by the laws of the state” governing “such corporation and conferred or provided by the agreement” and notwithstanding the similar provisions of the merger agreement so providing.
*135 In 1 Davies Ohio Corporation Law, 949, it is said:
“The power to consolidate or merge is strictly statutory; consequently, an attempt to consolidate or merge without statutory authorization is a nullity.”
At the time of incorporation of defendant corporation in 1916 there was no statutory authority for the merger of building and loan associations although there was statutory authority for their consolidation.
Thus defendant corporation and its stockholders could not have secured the benefits of that merger without taking advantage of the provisions of Section 8623-67 et seq., General Code, providing therefor. They could not enjoy the benefits of such a merger, as provided for by those statutes and the merger agreement made thereunder, and at the same time avoid the change in their rights which might follow from their doing so. They must take the bitter with the sweet. Any stockholders, who believed that the bitter outweighed the sweet'and therefore preferred not to go on with a corporate enterprise having amended articles of incorporation giving it powers greater than it theretofore possessed, had an opportunity, which was then availed of by some of them (Roessler v. Security Savings & Loan Co., supra), to require the corporation and the other stockholders to pay them the fair cash value of their shares as provided for in the statutes authorizing such a merger.
In 1 Davies Ohio Corporation Law, 950, it is stated:
“By the weight of authority, a statute, enacted under the reserve power of the Legislature to alter or repeal the corporation laws, which permits pre-existing corporations to consolidate or merge upon a vote of the majority shareholders and against the objection of the minority shareholders, and which provides for paying dissenting shareholders the appraised value of their shares, is constitutional and does not impair *136 the obligation of a contract or deprive dissenting shareholders of their property without due process of law.”
As stated by Allen, J., in Board of Education of City of Akron v. Proprietors of Akron Rural Cemetery, 110 Ohio St., 430, 144 N. E., 113, with reference to a corporation incorporated by special act prior to 1851:
‘ ‘ There is no attempt here on the part of the Legislature to change the charter of the * * * corporation. This is a case in which the corporation changes its own charter by its own act under the specific provisions of the statutes thereto applying. In compliance with the privilege offered it by the law, the corporation acts under * * * the general law, and thus becomes subject thereto. ”
Certainly the stockholders of defendant corporation, who have enjoyed for years the benefits conferred by these statutes relative to merger and by the merger agreement made by their corporation thereunder, can not now challenge the validity or constitutionality of the provisions of those statutes, making the merger agreement operative as amended articles of incorporation of their corporation and thereby conferring additional powers on their corporation, in order to avoid the burdens which they now believe are involved in the exercise of one of those additional powers. See State, ex rel. City of Columbus, v. Mitchell et al., Commrs., 31 Ohio St., 592; Clark v. Board of Education, 44 Ohio St., 595, 9 N. E., 790; Robbins v. Hennessey, 86 Ohio St., 181, 195, 99 N. E., 319.
It is contended that the language used in the merger agreement to describe the powers of defendant corporation is substantially the same as that used to describe the powers of the corporation in its original articles of incorporation in 1916. However, by saying in 1943, when that merger agreement was made, that the purpose of defendant corporation was “* * * *137 generally to do all things * * * authorized by the laws of Ohio to be done * * * by building and loan associations, ’ ’ reference was obviously being made to ‘ ‘ things * * * authorized by the laws” as in force in 1943, not the laws in force in 1916. Furthermore, the merger agreement made in 1943 specifically provides that defendant corporation is to “be possessed of all * * * capacity * * * power * * * and authority conferred or provided by the laws of the state of Ohio which shall govern such corporation”; and the statute under which the merger was consummated contained the same language. There were no comparable provisions in the original articles of incorporation.
Plaintiffs argue further that, even though the proceedings taken for the conversion of defendant corporation into a federal savings and loan association fully complied with the requirements of Section 9660-2, General Code, and with the applicable federal laws and rules and regulations thereunder, those proceedings did not constitute compliance with certain other statutes, which represent a limitation on the power of defendant corporation to convert into a federal savings and loan association.
Plaintiffs contend that the conversion of the defendant corporation into a federal savings and loan association under the provisions of Section 9660-2, General Code, will necessarily involve a reorganization of the defendant corporation, a dissolution of an Ohio building and loan association, an amendment of the articles of incorporation of an Ohio corporation, and a sale of the entire assets of an Ohio corporation. They then argue that, in order to accomplish the result contemplated by the foregoing statute, there must be compliance with Section 693-1, General Code, providing that a plan of reorganization may be adopted by “the holders of 51 per cent of the stock,” with Section 9665, General Code, providing for dissolution of a *138 building and loan association “by a majority vote of the stock entitled to be voted under its constitution,” with Section 8623-15a, General Code, dealing with reorganization of Ohio corporations in general and providing for the affirmative vote of a “majority of the shares of each class,” with Section 8623-15, General Code, providing for the amendment of articles of incorporation in general and requiring “the affirmative vote of the holders of shares entitled under the articles to exercise at least two-thirds of the voting power,” and with Section 8623-65, General Code, requiring, on the sale of the entire assets of a corporation, “the vote of holders of shares entitling them to exercise at least two-thirds of the voting power on such proposal.”
If it were not for the provisions of Section 9660-2, General Code, there might be some merit to this argument. However, a reading of the portions of that section hereinbefore quoted discloses that the General Assembly was aware of what it was doing and recognized that such an argument might be made. As to reorganization, that section mentions “the manner in which each class of the same [i. e., debts and liabilities of the converting association] will be * * * adjusted by such federal savings and loan association”; and, in providing for the protection of substantive rights theretofore existing against the converting association, that section recognizes that they may be “adjusted by the successor federal savings and loan association.” As to a sale of the entire assets, their transfer to the federal savings and loan association is specifically provided for. As to amendment of the articles of incorporation, that section provides for cancellation and annulment of the old articles and refers to the new federal savings and loan association charter. As to dissolution, that section specifically provides that, after completion of the conversion, “the corporate powers of the association under the laws of this state *139 shall cease to exist and its constitution and bylaws shall cease to be in force.” (Emphasis added.)
Ordinarily, if a statute generally imposes certain limitations on the right of a corporation to exercise a particular power and another statute specifically authorizes the corporation to exercise some other power which probably will involve an exercise of the powef provided for in the first statute, then, unless the second statute provides otherwise, the limitations provided in the first statute will not apply to the full exercise of the power granted by the second statute, at least where the second statute specifically recognizes that exercise of the power for which it provides probably will involve exercise of the power dealt with in the first statute.
Furthermore, the General Assembly, in Section 9660-2, General Code, not only made no reference to these other statutes upon which the plaintiffs rely, but clearly indicated in the first paragraph of that section that conversion into a federal savings and loan association was to be made “pursuant to the rules and regulations prescribed by and in accordance with said acts and laws [the federal laws], by proceeding as follows, and not otherwise.” (Emphasis added.)
Plaintiffs contend further that the proceedings, which were taken to convert defendant corporation into a federal savings and loan association, did not constitute compliance with certain provisions of the constitution of defendant corporation that are claimed to represent a limitation on the right of defendant corporation to so convert.
As hereinbefore pointed out, Section 9660-2, General Code, provides that, after completion of the conversion, “the corporate powers of the association under the laws of this state shall cease to exist and its constitution and bylaws shall cease to be in force.” The plaintiffs contend that, by reason of those provisions, *140 a conversion of an Ohio building and loan association into a federal savings and loan association under that statute necessarily involves the dissolution of the .Ohio corporation.
The constitution of the defendant corporation provides in part:
“VII — Dissolution—To dissolve the company, a resolution in writing asking for such dissolution, signed by the stockholders representing at least a majority of the stock entitled to vote under this constitution, shall be presented at a regular meeting of the board of directors.
“The board of directors shall then call a special meeting for the purpose of considering and acting upon such resolution; and if, at such meeting, stockholders representing a majority of the stock entitled to vote under the provisions of this constitution, vote for the dissolution, the board of directors shall take the necessary steps to wind up the affairs of the company, subject to the contract rights of its borrowers and the vested rights of stockholders and in accordance with statutory requirements existing at the date such action is taken.”
Admittedly, there was no signed resolution as described in the first paragraph of the foregoing article in the defendant corporations’ constitution. However, unless one of the three challenges to votes cast is sustained, the resolutions to convert and to approve the plan of conversion were approved by the vote described in the second paragraph.
Section 9647, General Code, provides:
“Such corporation shall have all the powers set forth in the following sections of this chapter.”
One of the powers set forth in the following sections of the chapter is the power specified in Sections 9660-1 and 9660-2, General Code, to convert into a federal savings and loan association. Another of the powers *141 so set forth in the following sections of the chapter is found in Section 9665, General Code, the first paragraph of which reads:
“To dissolve the corporation when by a majority vote of the stock entitled to be voted under its constitution and bylaws, which shall be consistent with the provisions of section ninety-six hundred and forty-nine, its continuance is deemed to be no longer desirable, but subject to the contract rights of its borrowers, and the vested rights of its members.”
A comparison of the foregoing-quoted provisions of article VII of the constitution of defendant corporation with the language of Section 9665, General Code, clearly indicates that these article VII provisions relate to the statutory power to dissolve described in the foregoing statute. Even if conversion into a federal savings and loan association in accordance with Sections 9660-1 and 9660-2, General Code, does logically involve the end of the Ohio corporation, there is nothing in the Ohio statutes to indicate that such conversion involves the exercise of the power provided for in Section 9665, General Code. In other words, while article YII of the defendant corporation’s constitution may constitute a limitation on the power to dissolve given by Section 9665, General Code, there is nothing in its language or in the Ohio statutes to indicate that it should be construed as a limitation on the power to convert into a federal savings and loan association granted by Sections 9660-1 and 9660-2, General Code.
The only other provisions in the constitution of defendant corporation, which might be construed as a limitation on the right of the corporation to exercise the power to convert into a federal savings and loan association as provided in Section 9660-2, General Code, are those provisions in article IX relating to amendments to the constitution and the articles of *142 incorporation of defendant corporation. For such amendments, there is required at an annual or special meeting of stockholders “a majority vote of the stock of record, represented in person or by proxy, held and voted by members of the company.”
The foregoing language does not require a majority vote of all the outstanding stock or of all the stock of record. The majority vote required is “of the stock of record, represented in person or by proxy, held and voted by members of the company.” In effect, this means a majority of the votes cast. Admittedly, there was such a vote. This requirement is less than the 51 per cent requirement in the federal statute, which had to be met in order to comply with the provisions of Section 9660-2, General Code.
The stockholders might have agreed among themselves and with the corporation that the exercise by the corporation of the power granted by Section 9660-2, General Code, to convert into a federal savings and loan association, should be subject to certain limitations. See State, ex rel. Webber, Pros. Atty., v. Shaw, 103 Ohio St., 660, 134 N. E., 643. As hereinbefore pointed out, there is no such agreement in the consolidation agreement, which now constitutes the articles of incorporation of defendant corporation. Furthermore, as hereinbefore pointed out, there is no such agreement of any significance in the constitution of defendant corporation. We have been referred to no such agreement in any stock certificate, in any subscriptions to stock, in the bylaws, or anywhere else.
The next question to be considered is whether plaintiffs as dissenting stockholders are entitled to the “fair cash value ’ ’ of their shares.
At the outset it should be noted that Section 9660-2, General Code, makes no provision for any such payment to dissenting stockholders and does not refer to any statute of this state which does.
*143 By its terms, Section 8623-72, General Code, provides for dissenting stockholders who do not vote in favor of proposals mentioned in that section and in any other section of the General Corporation Act (Sections 8623-1 to 8623-138, General Code). Certain sections of that act specifically provide that dissenting stockholders shall be entitled to the relief provided for in Section 8623-72, General Code. See Sections 8623-14, 8623-15a, 8623-65 and 8623-67, General Code. The rights of dissenting stockholders are also provided for in other sections of the General Code, snch as Section 710-86, relating to bank consolidations, Section 9546, relating to the consolidation of certain types of insurance companies, Section 8810, relating to the sale or lease of a railroad, Section 9034, relating to the consolidation of railroad companies, and Section 693-1, relating to reorganization of building and loan associations.
In support of their contention that Section 9660-2, General Code, indicates an intention that dissenting stockholders are to have such rights, plaintiffs rely on the provision of that section that “nothing herein shall be held or construed to deprive any person, firm or corporation of any substantive right theretofore existing against such association, nor of the right to enforce the same by appropriate proceedings against the property and assets transferred by operation of this paragraph.” However, the force of this argument is destroyed by the balance of the paragraph which reads, “in the event and to the extent that such substantive right shall not be satisfied or adjusted by the successor federal savings and loan association in accordance with its charter or the resolution of assumption hereinbefore required.”
With regard to this claim we believe it is sufficient to state that the right of a dissenting stockholder to receive the fair cash value of his shares is a statutory *144 right which the General Assembly frequently provides to protect minority stockholders in the event of a major corporate change. Unless the General Assembly has provided for such a right where a particular corporate change is made the stockholder does not have that right. This is an instance where the General Assembly has not provided any such right.
Plaintiffs rely on the implication at the end of the opinion by Turner, J., in Wildermuth v. Lorain Coal & Dock Co., 138 Ohio St., 1, 19, 32 N. E. (2d), 413, that the statutory right provided for dissenting stockholders in Section 8623-72, General Code, is “a substitute for the former remedies of a minority shareholder,” and on the concurring opinion of Turner, J., in Roessler v. Security Savings & Loan Co., supra, 480, 485, indicating that similar rights of dissenting stockholders may exist apart from statute.
However, the cases which have considered this question where, as here, the major corporate change was authorized by laws which were admittedly a part of the corporation’s charter have denied such extra-statutory rights to dissenting stockholders. Hale v. Cheshire Rd. Co., 161 Mass., 443, 37 N. E., 307; Mayfield v. Alton Railway, Gas & Electric Co., 198 Ill., 528, 65 N. E., 100; Thomson v. Indiana Union Traction Co., 183 Ind., 690, 110 N. E., 121. See 13 American Jurisprudence, 1117, Section 1223.
Plaintiffs have referred us to no case determining that dissenting stockholders have such rights apart from statute in the event of a major corporate change, except cases such as Lauman v. Lebanon Valley Rd. Co., 30 Pa., 42, 72 Am. Dec., 685 and State, ex rel. Brown, Pros. Atty., v. Bailey, 16 Ind., 46, 79 Am. Dec., 405, where the laws authorizing such a corporate change were held to be not a part of the corporation’s charter because enacted after the charter was granted. Cf. Geiger v. Seeding Machine Co., 124 Ohio St., 222, *145 238, 239, 177 N. E., 594. As hereinbefore pointed out, the present charter of defendant corporation came into existence when the consolidation agreement was made, adopted, and filed in 1943 and when Section 9660-2, General Code, was in force.
We do not believe that the General Assembly was unreasonable or arbitrary in authorizing such a conversion in the manner it did. Admittedly, such a conversion probably involves fundamental corporate changes, which cannot be accomplished generally in other instances without greater stockholder approval and protection to dissenting stockholders than that provided for in Section 9660-2, General Code, and the federal statutes and rules and regulations thereunder to which that statute refers. However, the General Assembly probably believed that the danger involved in the particular instance of such a conversion did not justify limitations such as it had generally provided by statute where those fundamental corporate changes were made in instances other than such a conversion.
In such a conversion, stockholders of the converting state association receive cash or its substantial equivalent (i. e., withdrawable shares of the new federal association. See Geddes v. Anaconda Copper Mining Co., 254 U. S., 590, 598, 65 L. Ed., 425, 431, 432, 41 S. Ct., 209) in exchange for their shares in the converting association. They are not called upon to exchange their shares for securities which are not the equivalent of cash, as they may be required to do in a consolidation or a reorganization or when articles of incorporation are amended; and the corporation is not called upon to accept something which is not the equivalent of cash, as it may be where all the assets of the corporation are sold. See Section 8623-65, General Code. Where, as here, all stockholders are given sufficient notice of a meeting duly called to consider the question of approving such a conversion, and a majority *146 of the votes cast are for approval of the conversion, it is reasonable to determine that the self-interest, in protecting their stockholder rights, of those stockholders who are sufficiently interested to attend the meeting and vote for approval will ordinarily be a sufficient protection to the similar stockholder rights of those stockholders who either voted against approving the conversion or were not even sufficiently interested to attend such a meeting. See Durfee v. Old Colony & Fall River Rd. Co., 87 Mass., 246.
Furthermore, such a conversion of an Ohio building and loan association would not be likely to result in the elimination of an organization designed to provide mortgage credit for home owners and prospective home owners and to encourage savings by Ohio citizens, as would the dissolution of such an association or the sale of all its assets. Therefore, the same public interest in having such institutions, which justifies the state in providing for their incorporation and regulation by the state, would well justify the General Assembly in providing for such a conversion without providing for the limitations usually imposed where those other fundamental corporate changes are involved.
This court should not substitute its judgment on a legislative problem for the judgment of the General Assembly by inserting into the statute provisions which it does not contain.
The plaintiffs contend that the plan of conversion is inequitable and deprives them of their property without due process of law.
This court has previously recognized that, even though proceedings to adjust the rights of those having claims against or interests in a corporation may appear to be valid on their face, their operative effect upon a particular state of facts may invade constitu *147 tional rights. Belden v. Union Central Life Ins. Co., 143 Ohio St., 329, 55 N. E. (2d), 629.
In the instant case, defendant corporation had deposits in excess of $7,300,000. Its total indebtedness, including these deposits, amounted to roughly $8,-100,000. The total value of the assets as shown by the balance sheet was approximately $8,800,000. Thus, the books of defendant corporation showed roughly $700,000 as what is sometimes referred to as the “equity” available for the stockholders. As there were approximately 1,900 shares of permanent stock outstanding, this meant that this equity or “book value” amounted to approximately $370 per share.
In such a building and loan association organized under the laws of Ohio, -holders of permanent stock may not withdraw their interest in the corporation. Prom time to time, such stockholders may be entitled to the distribution of profits, if and when they are declared as dividends. However, the only other way in which the stockholders may ever realize on the book value of their shares, other than by disposing of their shares, is when the corporation is liquidated and after all depositors and other creditors of the corporation have been paid in full. Anything remaining may then be distributed pro rata to the stockholders. See Bradley v. Bauder, 36 Ohio St., 28, 35, 38 Am. Rep., 547; 13 American Jurisprudence, 465, Section 412.
A federal savings and loan association is organized on a different basis. In such an association there are no depositors as such. Those who deposit their money with such an association become stockholders to the extent of their deposits. There are no individuals having interests in the corporation comparable to those of the holders of permanent nonwithdrawable shares of a corporation such as defendant corporation.
It is obvious, therefore, that, in converting a state *148 building and loan association such as defendant corporation into a federal savings and loan association, there is no way to provide for holders of permanent stock of the state association except by providing for the exchange of their shares either for cash or for withdrawable share accounts in the federal association. Since the withdrawable shares of a federal savings and loan association are substantially the equivalent of cash, the adjustment of rights of holders of shares of permanent stock of the state association, on conversion into a federal association, in effect amounts to an exchange by those stockholders of their shares for cash or its substantial equivalent.
It is claimed that the plan is inequitable because each $100 par share of defendant corporation had a book value of $372.95. (If reserves amounting to $178.55 are deducted, the book value is only $194.40.) It is also pointed out that the earnings of each share amounted to $22.79 in 1948 and $13.39 for the first half of 1949. It is contended that, under the plan of conversion, the difference, between the book value and $135 is, in effect, given to the depositors, since the book value of assets representing that difference is allocated under the plan of conversion to reserves of the new federal savings and loan association.
The difficulty with these arguments is that they are necessarily based either on the premise that book value represents actual value or on the premise that the stockholders of defendant corporation had some reasonable means of realizing the book value of their shares. Neither of these premises is sound.
The book value of an asset ordinarily merely represents the cost of that asset. Such book value may be reduced by book entries for depreciation or obsolescence but, except as reserves may be set up to recognize decreases in value, the rise or fall in value of an asset is not usually recognized by its book value. Thus, *149 the book value of an asset at any given time may be more or less than its value. In the case of a building and loan association, it is unlikely that the value of many of its assets will be greater than the book value. This is because those assets are for the most part mortgages and other credit claims against individuals. For example,-where a building and loan association loans $5,000 to an individual secured by a mortgage on his property, the book value of that mortgage claim will be $5,000. Since no more can be realized than $5,000 when that mortgage claim is collected, it is obvious that it is unlikely that the mortgage claim will ever have a value in excess of its book value. On the other hand, it is equally obvious that such a mortgage claim may at some later time have a value less than its book value, especially if the mortgagor has then become insolvent and the value of the mortgaged property has depreciated. That the book value of shares of stock has no necessary relation to the value of those shares is apparent when the market value of shares having a very active market on the New York Stock Exchange is compared with the book value of the same shares. As one example, the book value of shares of the Northern Pacific Railway Company at the end of 1950 was' over $223 per share, but for many years its shares have never sold as high as $80 per share. Many similar examples could readily be given.
The fallacy of the argument, that the difference between the book value and $135 is, in effect, given to depositors, should be apparent. For example, if a corporation sells one of its assets for less than its book value, it does not follow that stockholders are injured by such a sale, even though the necessary result of the sale will be a decrease in the book value of their shares. Nor does it follow that the resulting decrease in the book value of those shares represents anything of value which has been transferred to the buyer of *150 that asset. The asset sold may have decreased in value well below any adjusted cost basis (hook value) at which it is carried on the corporation’s hooks. A sale at less than the value at which it is listed on the corporation’s books may still be a sale at a very advantageous price.
There is ordinarily no way in which a stockholder may realize anything from his shares except by either (1) a sale of the shares for cash, (2) a liquidation of the corporation on dissolution, or (3) an exchange of the shares for other assets, for example in a reorganization or in a consolidation.
In the instant case, the conversion results in an exchange of each share for a share account in the federal association which is substantially equivalent to $135 in cash. In determining whether the plan of conversion, compelling a stockholder to make such an exchange, deprives the stockholder of the value of his shares, consideration must be given to certain facts.
Notwithstanding the substantial earnings of defendant corporation in 1948 and 1949, the corporation paid dividends at the rate of only $3 per share in those years. The dividend rate prior to those years had been less. The reason for dividends being so much less than earnings is found in the regulations of the Federal Deposit Insurance Company, which insured the deposits of defendant corporation. Obviously such insurance was necessary in order to enable defendant corporation to compete for deposits with other such associations. Those regulations required the maintenance of specified ratios between deposits and capital and between the total of capital and reserves as against deposits. Under those regulations, because defendant corporation did not have those ratios, it was required to allocate 20 per cent of its earnings to reserves before computing any interest on savings accounts. As a result of these requirements, the portion of the *151 $22.79 earnings per share of defendant corporation in 1948, which was available for dividends after such reserves had been set up, was only $3.60.
The market price of defendant corporation’s stock ranged from a low of $15 per share in the 1930’s to a high of about $100 per share early in 1949, except for the sales hereinafter referred to at a higher price made under the influence of special factors.
Admittedly, plaintiffs, in an effort to block the conversion of defendant corporation, purchased, just before the meeting called to approve that conversion, a very substantial number of shares at $160 per share. Furthermore, plaintiffs made an offer to purchase such shares at that price, on condition that they could secure by such purchases 750 shares of defendant corporation. However, the evidence clearly shows that plaintiffs were interested in making an investment which, at some time in the future, they believed they could liquidate or dispose of at a profit, — -not in making an investment which could be liquidated within a reasonable time at a reasonable price or an investment upon which a reasonable dividend return would be received currently. Under the circumstances, their purchase at $160 per share and their conditional offer to purchase at that price, if they were able to purchase 750 shares at that price, do not tend to show that $135 was not a fair price for and did not represent the value of these shares.
The only other evidence in the record of any sale above $110 per share is evidence of an isolated sale of 12½ shares at $150 per share to the president of defendant corporation, made about four months before the meeting called to approve the conversion. These were purchased to promote the conversion.
In view of the evidence, it is clear that any stockholder, interested in realizing upon his shares of defendant corporation, could not reasonably expect to *152 receive within the foreseeable future as much as $135 per share. That being so, it is apparent that the majority, in voting to approve the plan of conversion, and thereby exchange the frozen assets represented by their shares for liquid assets having a cash value equivalent of $135 for each of their shares, could do that reasonably and in good faith.
There is some evidence that the assets of defendant corporation had a value in excess of their book value and that, on liquidation, stockholders could realize in excess of the amount of the book value for their shares. However, as hereinbefore pointed out, there was also evidence tending to prove that the shares of defendant corporation had a value substantially less than $135 per share. If due process of law does prevent any corporate action, that will require dissenting stockholders to accept less than full compensation for their shares, even where the charter of the corporation authorizes such corporate action on approval by a majority vote and such approval has been given in good faith and without fraud, nevertheless the question, whether the amount to be given for shares is full compensation for them, is a question of fact. The evidence would have justified the triers of the facts in determining that there was such full compensation. This court will not weigh that evidence and substitute its finding on that question of fact for the finding of the Court of Appeals, necessarily involved in the journal entry made by that court and clearly indicated by the statements in the court’s opinion. (99 N. E. [2d], 84, 91.)
While, under the plan of conversion, no stockholder is to receive any more for his shares than any other stockholder, plaintiffs contend that the directors and officers of defendant corporation, all of whom voted to approve the plan, will secure an additional advantage not available to other stockholders, because it will be *153 easier for them to perpetuate themselves in office after conversion by reason of the great increase in the number of stockholders of the federal association as compared to the number in the state association. In our opinion, whether this is an advantage to those directors and officers and whether, if it is, it represents any advantage of benefit or value to them, -were questions of fact. Because this court does not weigh the evidence and because we believe the evidence justified the findings on those questions of fact, necessarily involved in the journal entry of the Court of Appeals, this court will not disturb those findings.
The contention, that the actions of defendants in their promotion of the plan were both actually and constructively fraudulent, was fully discussed in the opinion of the Common Pleas Court. (97 N. E. [2d], 435, 453, 454, 455, 456.) As that discussion indicates, any such contentions, which had merit, necessarily depended upon findings of facts. In our opinion, the evidence supports the findings of facts, necessarily involved in the journal entry of the Court of Appeals, in favor o'f the defendants on the issues raised by those contentions.
As appears from what we have said, even if all the plaintiffs’ challenges to the votes with respect to 80 shares were sustained, the proceedings taken for conversion of defendant corporation into a federal association would fully comply with the requirements of its charter; and that charter represents a contract binding upon all the stockholders of defendant corporation. Therefore, we deem it unnecessary to consider whether those challenges should be sustained.
It may be suggested that Sections 9660-1 and 9660-2, General Code, involve a delegation of legislative power and are, therefore, unconstitutional. This question was not raised in the assignment of errors, was not presented by the briefs of counsel, and was not *154 argued to this court. Nothing in the record indicates that this question was raised in the Common Pleas Court or in the Court of Appeals.
Under the provisions of Section 12223-21, General Code, “errors not argued by brief may be disregarded.” Furthermore, this court has held that, where a constitutional question, claimed to be involved in a case, was not submitted to the Court of Appeals, such case does not involve a debatable constitutional question. Hoffman v. Staley, 92 Ohio St., 505, 112 N. E., 1084.
We believe that the constitutionality of Sections 9660-1 and 9660-2, General Code, was not questioned by the plaintiffs on this ground because they realized that a contention, that these statutes were unconstitutional because they involved a delegation of legislative power, had no merit.
The power to convert into a federal savings and loan association is granted by the General Assembly in Sections 9660-1 and 9660-2, General Code. In making that grant, the General Assembly has imposed conditions and limitations on the exercise of that power, such as the requirement of compliance with federal laws and with regulations of the federal agency concerned with the question as to whether a particular Ohio corporation should be permitted to become a federal savings and loan association. The imposition of such conditions and limitations on the exercise of the power so granted does not constitute a delegation of legislative power. There are a substantial number of decisions by this court which clearly require that conclusion. See, for example, Carpenter v. Cincinnati, 92 Ohio St., 473, 475, 476, 111 N. E., 153; Cincinnati, Wilmington & Zanesville Rd. Co. v. Commrs. of Clinton County, 1 Ohio St., 77, 87-91; State, ex rel. Allen, v. Ferguson, Aud., 155 Ohio St., 26, 42, 43, 97 N. E. (2d), 660, and paragraphs eight and nine of the sylla *155 bus; State, ex rel. Standard Oil Co., v. Combs, 129 Ohio St., 251, 257-261, 194 N. E., 875, and paragraphs three and four of the syllabus; Gordon v. State, 46 Ohio St., 607, 630 et seq., 23 N. E., 63, 6 L. R. A., 749; State v. Messenger, 63 Ohio St., 398, 401, 59 N. E., 105, and paragraph three of the syllabus: Newton v. Bd. of Commissioners, 26 Ohio St., 618, and paragraph two of the syllabus (affirmed 100 U. S., 548, 25 L. Ed., 710); Peck v. Weddell, 17 Ohio St., 271, 288, and paragraph six of the syllabus.
Cases such as City of Cleveland v. Piskura, 145 Ohio St., 144, 60 N. E. (2d), 919, fall within the classification of laws “which imperatively command or prohibit the performance of acts,” and not within the classification into which Sections 9660-1 and 9660-2, General Code, fall of “those which only authorize or permit them.” See Cincinnati, Wilmington & Zanesville Bd. Co. v. Commrs. of Clinton County, supra, 87, 88. The foregoing cases point out the distinction between those two classifications of laws, which must be observed in determining whether there has been a delegation of legislative power.

Judgment affirmed.

Zimmerman, Stewart and Hart, JJ., concur.
Weygandt, C. J., concurs in the judgment.
Middleton and Matthias, JJ., dissent.